# Supreme Court Decisions.

## CONSOLIDATION OF CONSTITUENT COMPANIES.

### THE CLEVELAND CITY RAILWAY CO. v. FIRST NATIONAL BANK OF NEW YORK.

Decided, June 23, 1903—68 Ohio State, p. 582.

*Consolidation of Constituent Companies—Section 3381, Revised Statutes—Proceedings to Effect Consolidation—Lawful for Directors of Such Constituent Companies to Agree—That Such Companies Shall Enter Consolidation Free From Debt—Sale of Stock Apportioned to One Company to Pay Debts—Distribution of Remaining Stock Among Holders in Said Company—Agreement Between Holders of Majority of Stock in Said Companies Respectively—Holder of Shares as Pledgee—Not Stockholders Till Stock Transferred on Company's Books—Rights of Pledgee—Consolidated Company not Liable for Conversion of Pledged Stock of Constituent Companies, When—Restriction of Transfer—Certificate of Stock—Law of Corporations—Consolidation.*

1. Under Section 3381, Revised Statutes, which authorizes the directors of the constituent companies of a proposed consolidation to enter into a joint agreement for the consolidation, prescribing the terms and conditions thereof, the mode of carrying the same into effect and the manner of converting the capital stock of each of the constituent companies into that of the new company, with such other details as they may deem necessary to perfect the new organization and the consolidation of the companies, it is lawful for such directors to agree, as part of the terms and conditions of the proposed consolidation, that the constituent companies shall come into the consolidated company free from debt; and that of

545

the stock apportioned to one of the constituent companies enough shall be sold to pay the floating indebtedness of that company, and the remainder distributed among the holders of the preferred and common stock of such company, in proportion to the relative value of such preferred and common stock.

2. Where the directors of two constituent companies made it a part of the terms and conditions of the consolidation that, as to all property matters between the two companies which were not specifically adjusted in the agreement of consolidation, they should "be adjusted pursuant to a memorandum of agreement entered into by the holders of more than a majority of the stock of said constituent companies" previously entered into, such agreement by the stockholders was thereby made part of the consolidation agreement, and stockholders who signed the latter agreement as directors must be held to have been cognizant of, and to have assented to, the said agreement by the stockholders, and they and those claiming under and through them are bound by a distribution of stock which was made in pursuance of such stockholders' agreement and such directors' agreement for consolidation.

3. A person who holds shares of stock in pledge, although the shares are assigned in blank by the registered owner, does not become a stockholder until the shares are transferred to him on the books of the corporation; and a mere pledgee, who has not become a registered stockholder, is not entitled to participate in, or to be notified of, the proceedings to effect a consolidation of two or more companies.

4. Where it was agreed by the directors of the constituent companies that certain shares of the capital stock of the consolidated company should be distributed to one of the constituent companies, to be disposed of by that company so far as necessary to liquidate its floating indebtedness, the remainder to be distributed among the holders of the stock of that company, which agreement was assented to by the pledgors of such shares, but without the knowledge of the pledgees, and was performed by the consolidated company by delivering the shares to "agents and proxies" of the constituent company and its stockholders, designated by them to carry out the agreement of the consolidation in regard thereto, the consolidated company is not liable for the conversion of such pledged shares after they passed into the possession of such agents and proxies; nor is such a distribution of shares of its capital stock by the consolidated company a violation of the provision contained in the certificates of shares in the constituent company that they were transferable on the books of that company only on the surrender of the certificates.

Error to the Circuit Court of Cuyahoga County.

This action was instituted in the Court of Common Pleas of Cuyahoga County by the First National Bank of New York, defendant in error, against the Cleveland City Railway Co., the plaintiff in error, to recover damages for the alleged wrongful conversion of certain shares of the capital stock of the plaintiff in error, which the bank claimed that it was entitled to recover under the terms of a certain agreement of consolidation between the two constituent companies of the plaintiff in error. A judgment was rendered in the court of common pleas for the bank in the sum of $22,082.34, which was affirmed by the circuit court. This proceeding in error is prosecuted to reverse these judgments. The material facts of this case are practically undisputed and are as follows:

In May, 1893, the Cleveland City Cable Railway Co. and the Woodland Avenue and West Side Street Railway Co. each operated and owned lines of street railway in the city of Cleveland, Ohio. On May 10, 1893, stockholders of both companies, owning more than two-thirds of the stock of each, entered into a preliminary agreement for consolidation, fixing the name of the proposed consolidated company, the amount of its capital stock, the share thereof of each constituent company, and the manner of converting the stock of each into that of the new company. This agreement also contains the following provisions:

"Each of the respective companies hereto shall pay off all of its floating indebtedness on June 1, 1893, so that when said consolidation goes into effect on such date each shall be free and clear of all indebtedness beyond the two million dollars of bonds assumed as above stated, except such indebtedness incurred for new material and equipment in the regular course of business which has not yet been delivered, and such equipment and material as has already been delivered to provide St. Clair street with electricity, which indebtedness the Cleveland City Railway Co. is to assume, and also to assume all contracts by the Cleveland City Cable Railway Co. for equipping St. Clair street with electricity, and also all contracts made by the Woodland Avenue and West Side Street Railroad Co. for new rails, cars, material, etc.

"The undersigned stockholders of the Cleveland City Cable Railway Co. hereby appoint, and irrevocably designate, Frank DeH. Robison and John J. Shipherd as their agents and proxies to carry

out this agreement and perfect said consolidation, and they are hereby authorized to attend any and all stockholders' meetings of the Cleveland City Cable Railway Co. called for the purpose of carrying out the terms of this agreement, and to vote all the stock standing in the name of each of the undersigned in such manner as they shall find necessary to carry out and ratify all of the purposes of this agreement, and each of the undersigned stockholders in said company hereby agrees to deliver to said two persons, or their chairman, at such time as they may designate, all of the stock held by him to be exchanged for stock of the consolidated company, in proportion to the respective holdings of each as each shall be entitled to receive the same.

"The method of organization of the consolidated company, and all of the details with reference to it, and the working out of the settlement and adjustment of the details of this agreement, are left by all of the undersigned to said * * * Frank DeH. Robison and John J. Shipherd, committee for the stockholders of the Cleveland City Cable Railway Co., to be agreed upon and to be to the satisfaction of each of said committees."

On May 11, 1893, the directors of the two companies entered into an agreement of consolidation pursuant to statute (Section 3381), and in accordance with the preliminary agreement of stockholders, fixing the amount of the capital stock of the new company at eighty thousand (80,000) shares of the par value of one hundred dollars ($100) each. The provisions of said agreement relating to the disposition of this stock are as follows:

"Seventh—Said shares of capital stock shall be distributed as follows:

"(1). To said the Woodland Avenue and West Side Railroad Co., party of the first part, fifty-one thousand seven hundred and fifty (51,750) shares, to be distributed by said company among its stockholders as they are respectively entitled to receive the same.

"(2). To the Cleveland City Cable Railway Co., party of the second part, eighteen thousand two hundred and fifty (18,250) shares, to be disposed of by said company, so far as necessary, to liquidate its floating indebtedness, and the remainder to be distributed among the holders of the common and preferred stock of said company in proportion to the present relative value of such preferred and common stock.

"(3). Ten thousand (10,000) shares of said stock to remain in the treasury of the company, to be issued by the board of directors, according to law, at such time and in such manner as the interests of the company may require."

Said agreement also contains the following provisions:

"Ninth—Each of the constituent companies, parties hereto, is to pay off and discharge all of its floating and current indebtedness now existing, and each of said companies shall be entitled to receive all of the receipts of its present lines until and including May 31, 1893, so that on June 1, 1893, the consolidated company shall be entirely free and relieved from all such floating and current indebtedness and not obliged to pay any of the same, except such indebtedness incurred for new material and equipment in the regular course of business which has not yet been delivered, and such equipment and material as has already been delivered to provide St. Clair street with electricity, which indebtedness the Cleveland City Railway Co. is to assume, and also is to assume all contracts by the Cleveland City Cable Railway Co. for equipping St. Clair street with electricity, and also all contracts made by the Woodland Avenue and West Side Street Railroad Co. for new rails, cars, materials and equipment. All claims held by each of the constituent companies in the city of Cleveland, Ohio, are hereby assigned to the consolidated company, and the consolidated company, upon collecting the same, shall account to the stockholders of the constituent company entitled to receive the same for all net amounts received on account of such claims. The Cleveland City Railway Company assumes all liabilities against each of the constituent companies for injuries heretofore committed by them. The adjustment of all other property matters remaining between the two constituent companies and the consolidated company shall be adjusted pursuant to a memorandum of agreement entered into by the holders of more than a majority of the stock of said constituent companies, bearing date of May 10, 1893."

This agreement of consolidation was duly executed, ratified by more than two-thirds of the stockholders of each constituent company, and duly filed with the secretary of state as provided by law.

On June 16, 1893, the Cleveland City Railway Co. issued stock certificate No. 2 for 51,750 shares of its stock to  *  *  *  for 18,250 shares of its stock to Frank DeH. Robison and John J. Shipherd, trustees, being the share of the cable company stockholders.

Mr. Robison was president and Mr. Shipherd was vice-president and treasurer of the cable company. Both were directors of that company; and immediately upon the consolidation both were made members of the directory and the executive committee of the new company. Mr. Robison was also made vice-president, and Mr.

Shipherd treasurer and transfer agent of the new company.

The floating debt of the cable company at the date of consolidation, June 1, 1893, was such sum as, with interest to December 1, 1894, amounted to $420,318.86.

The firm of Taintor & Holt was during the time of the proceedings resulting in consolidation, composed of the following individual members: George H. Holt, G. E. Taintor, and G. D. l'Huillier; they were directors of the cable company and joined in the execution of the consolidation agreement. Mr. Holt was one of the vice-presidents, and Mr. l'Huillier was assistant secretary of the cable company.

On June 1, 1893, 100 shares of preferred cable company stock stood in the name of George H. Holt, and 200 shares in the name of Giles E. Taintor, both of whom were members of the firm of Taintor & Holt, as above stated.

In addition, on the same date, Taintor & Holt held 13,300 shares of common stock, equivalent, on the basis of five shares of common stock to one of preferred, to 2,650 shares of preferred. This stock stood on the books of the company in the name of G. A. Schriefer, a clerk in the office of Taintor & Holt, but was admitted upon the trial to belong to the firm of Taintor & Holt. The jury rendered a special finding to the effect that the firm of Taintor & Holt were the owners of the 300 shares of preferred stock, subject to its pledge to the plaintiff hereinafter referred to.

In 1891 Taintor & Holt borrowed of the defendant in error $25,000 and pledged with it as collateral security said 300 shares of preferred stock, endorsed in blank, which certificates of stock have remained in the possession of the bank since that date. Power to transfer was also indorsed upon the certificate, but that power was never executed, Taintor & Holt remaining the registered owners of the stock on the books of the cable company. By the terms of these certificates they were transferable only upon the books of the company. On November 7, 1898, said Taintor & Holt and the bank jointly made demand upon the Cleveland City Railway Co. for the issuance of a certificate of stock for Taintor's alleged proportion of the 18,250 shares, and offered to pay the portion of the floating debt chargeable thereto. A like demand was made on the same date on behalf of the said Holt and the bank jointly. Both the said demands were refused.

On November 15, 1898, the bank took an assignment of said stock from Taintor & Holt, and agreed to prosecute this action and account for any surplus recovered after payment of its debt.

Dividends paid upon the stock of the new company from June 1, 1893, to October 1, 1898, amounted to $10.25 on each share of stock outstanding.

The certificate for 18,250 shares was, after its issuance and delivery to Robison and Shipherd, trustees, endorsed by them in blank and deposited with the Savings & Trust Co., the registrar of the consolidated company, and new stock charged up against it as issued by Shipherd. All the stock covered by this certificate had been issued against it by Shipherd on September 21, 1893, except twelve shares which were issued to M. A. Hanna, president, trustee, January 15, 1895, to balance the account. A large amount of this stock was wrongfully converted by Shipherd to his own use, and it is claimed that the portion of stock to which the bank claims it was entitled, by virtue of the 300 shares pledged with it, was a portion of the stock thus wrongfully converted.

All of the stockholders of the Woodland Avenue Co. received their proportionate shares of the new stock covered by certificate No. 1.

On June 29, 1893, stock of the new company to the amount of 1,995 shares was issued to Mr. Schriefer, for and on behalf of Taintor & Holt, and sent by Mr. Shipherd to them, without the delivery of any of the certificates of the cable company; but some time in 1896, 9,975 shares of the common stock held in his name were returned to Mr. Shipherd by Taintor & Holt.

At the time of the delivery of this stock, no part of the floating debt was paid by Taintor & Holt; nor has any of the floating debt of the cable company charged to all the stock held, at the time of the consolidation, by Taintor & Holt, viz., 300 shares of preferred and 13,300 shares of common, been paid. No shares of the new company were ever issued for the balance of the preferred and common stock held by Taintor & Holt.

At the time of consolidation there were outstanding 10,000 shares preferred and 30,000 shares of common stock of the cable company. The relative value of the common stock, as fixed by a

committee appointed by the stockholders, to-wit, Shipherd and
Robison, was as five shares of common to one of preferred.

*Squire, Sanders & Dempsey,* for plaintiff in error.

*Hoyt, Dustin & Kelley,* for defendant in error.

DAVIS, J.; BURKET, C. J., SPEAR, SHAUCK, PRICE and CREW,
JJ., concur.

This case was orally argued before one division of the court;
but it has been fully considered by the whole court.   Only one
of the assignments of error will be noticed in this opinion because,
on the conceded facts, we are of the opinion that the court of
common pleas should have directed a verdict and rendered a judg-
ment in favor of the defendant; and failing to do this it was the
duty of the circuit court to reverse the judgment of the court of
common pleas, and to render a judgment for the plaintiff in error.
This conclusion results directly from the considerations follow-
ing.

By Section 3381, Revised Statutes, the directors of the con-
stituent companies of a proposed consolidation are authorized to
"enter into a joint agreement, under the corporate seal of each
company, for the consolidation of the companies, and *prescribing
the terms and conditions thereof, the mode of carrying the same
into effect,* the name of the new company, the number of directors
and other officers thereof, and their places of residence, the amount
of capital stock of the new company agreed upon, the number of
shares of capital stock, the amount of each share *and the manner
of converting the capital stock of each of the constituent companies
into that of the new company, with such other details as they may
deem necessary to perfect the new organization and the consolida-
tion of the companies."*   In prescribing the terms and conditions
of the consolidation it is entirely competent for the directors to
agree that the constituent companies shall come into the new or-
ganization free from debt, although if they do not do so the lia-
bilities of such companies will attach to the new company as
provided in Section 3384, Revised Statutes; and the directors are
expressly authorized to agree upon the mode of carrying into ef-
fect the terms of the consolidation which shall be agreeed upon.
And further, the directors are not only expressly empowered to

agree upon the manner of converting the capital stock of each of the constituent companies into that of the new company, but they are invested with the widest discretion as to the details of the consolidation, which may not be specifically included in the words of the statute.

It was therefore lawful for the directors of the two constituent companies which were consolidated into the Cleveland City Railway Co. to agree, as they did agree, as part of the terms and conditions of the proposed consolidation, that the constituent companies should come into the consolidated company free from debt and that of the stock apportioned to the Cleveland City Cable Railway Co. enough should be sold to pay the floating indebtedness of that company, the remainder to be distributed among the holders of the common and preferred stock of the cable company, in proportion to the relative value of such preferred and common stock. The directors were also clearly acting within the powers conferred upon them by the statute when they made it a part of the terms and conditions of consolidation that as to all property matters between the two companies which were not specifically adjusted in the agreement of consolidation, they should "be adjusted pursuant to a memorandum of agreement entered into by the holders of more than a majority of the stock of said constituent companies, bearing date May 10, 1893;" because not only was it a certain and proper term or condition which might be stipulated for by the parties to the agreement, but it provided "the mode of carrying into effect" the terms and conditions, and it provided "the manner of converting the capital stock of each of the constituent companies into that of the new company," and because it specifically pointed out and prescribed "other details" which, in the judgment of the directors, were necessary in perfecting the consolidation of the two companies. The agreement by the stockholders dated May 10, 1893, was thereby read into and made part of the agreement of consolidation by the directors. So that whoever signed the latter agreement as directors must necessarily be held to have been cognizant of, and to have assented to, the agreement by the stockholders; and that is the position in this action of Taintor & Holt, from whom the defendant in error claims to have acquired title to the shares in the Cable Railway Co. which

it. alleges that the plaintiff in error wrongfully converted to its own use.

In prescribing the proceedings to effect a consolidation of two or more companies, the statute requires a ratification of the agreement for consolidation by the stockholders; and it virtually defines the term "stockholders" by requiring due notice of the meeting and place of the meeting and the object thereof, to be given "to each of the persons in whose names the capital stock of the company stands on the books thereof." Section 3381, Revised Statutes. There is no provision for or requirement of participation by or notice to a person who has a concealed equity in stock. A person who holds shares of stock in pledge, assigned in blank by the registered owner, may protect himself by having the stock transferred to him on the books of the company. Until he does so he does not become a stockholder. *Henkle* v. *Salem Manufacturing Co.,* 39 Ohio St., 547. "If the shares of stock are merely pledged by the assignment of the certificates, the holders would not be entitled to the rights nor subject to the liabilities of the owners of the shares; they could only become owners by a sale and purchase of the stock pledged, on failure of the pledgee to pay the debt." Per Nelson J., *Becher* v. *Wells Flouring Mill Co.,* 1 McCrary (U. S.), 62. The jury specially found in this case that on June 29, 1893, after the consolidation, Taintor & Holt were still the owners of the stock and that on that date they received from the plaintiff in error all of the stock which they were entitled to receive by reason of their ownership of the cable company stock. It appears, therefore, the plaintiff in error having performed its agreement as to the registered and actual owners of the stock, it is now sought to compel it to perform again, on account for the value of the stock, to a pledgee, who has not shown that it was entitled to more than a mere lien upon the stock at the time of the consolidation.

We return now to the stockholders' agreement, which contains the following stipulations:

"The undersigned stockholders of the Cleveland City Cable Railway Co. hereby appoint and irrevocably designate Frank DeH. Robison and John J. Shipherd as their agents and proxies to carry out this agreement and perfect said consolidation, and they are hereby authorized to attend any and all stockholders' meetings of

the Cleveland City Cable Railway Co. called for the purpose of carrying out the terms of this agreement, and to vote all the stock standing in the name of each of the undersigned, in such manner as they shall find necessary to carry out and ratify all of the purposes of this agreement, and each of the undersigned stockholders in said company hereby agrees to deliver to said two persons, or their chairman, at such time as they may designate all of the stock held by him, to be exchanged for stock of the consolidated company in proportion to the respective holdings of each, as each shall be entitled to receive the same.

"The method of organization of the consolidated company, and all of the details with reference to it, and the working out of the settlement and adjustment of the details of this agreement, are left by all of the undersigned to said  *   *   *   Frank DeH. Robison and John J. Shipherd, committee for the stockholders of the Cleveland City Cable Railway Co., to be agreed upon and to be to the satisfaction of each of said committees."

These stipulations being incorporated by reference in the agreement of consolidation which was signed by all of the members of the firm of Taintor & Holt, they and their firm must be held to have assented to the appointment of Robison and Shipherd "as their agents and proxies" for all the purposes therein named, and thereby agreed "to deliver to said two persons, or their chairman, at such times as they may designate, all of the stock held by them, to be exchanged for stock of the consolidated company, in proportion to the respective holdings of each as each shall be entitled to receive the same." The stock certificates which were pledged by Taintor & Holt to the defendant in error contained a provision that they were transferable on the books of the company only on surrender of the certificates. The utmost that can be claimed from this is that the duty was imposed on the cable company to not transfer on its books without surrender of the certificates. But transfer on the books of that company was not asked for, nor was such a transfer by that company made. It was agreed by the directors of the constituent companies that 18,250 shares of the capital stock of the consolidated company should be distributed to the cable company to be disposed of by that company, so far as necessary to liquidate its floating indebtedness, the remainder to be distributed among the *holders* of the stock of the company. The agreement was lawful, it was assented to by Taintor & Holt, and on

the part of the plaintiff in error it was fully performed by the issue of the 18,250 shares of stock to Robison and Shipherd as "agents and proxies" for the Cleveland City Cable Railway Co. and its stockholders to carry out the agreement of consolidation in regard thereto. The designation of Robison and Shipherd in the certificate as "trustees" instead of "agents and proxies," does not alter the legal consequences of the transfer. Hence if there was any conversion of the shares belonging to Taintor & Holt it was not by the plaintiff in error and it is not liable therefor.

It is not for us to determine in this action whether the defendant in error has a cause of action against Robison and Shipherd or either of them, or against Taintor & Holt, or against the Cleveland City Cable Railway Co. It is sufficient now to determine that the plaintiff in error is not liable for the alleged conversion.

*Judgments of the circuit court and that of the court of common pleas are reversed and judgment for plaintiff in error.*