## LOSS OF STOCK THROUGH DEFALCATION OF TRANSFER AGENT.

Circuit Court of Cuyahoga County.

SARAH C. K. ROBISON v. THE CLEVELAND CITY RAILWAY COMPANY; MARIA A. ROBISON v. THE CLEVELAND CITY RAILWAY COMPANY; AND MARTIN S. ROBISON v. THE CLEVELAND CITY RAILWAY COMPANY.

Decided, February 8, 1904.

*Corporations—Liability of Company for Defalcation of its Transfer Agent.*

Where a corporation has made it possible for its transfer agent to mix and confuse stock which he held as trustee for various parties with treasury stock of the company, and a large part of the stock entrusted to the transfer agent is lost through his defalcation, the company is liable to those for whom the transfer agent acted as trustee for such of the stock entrusted to the transfer agent as was returned to the treasury of the company.

*A. W. Lamson, Kline, Carr, Tolles & Goff* and *L. A. Russell,* for plaintiffs.

*Squire, Sanders & Dempsey,* contra.

WINCH, J.; HALE, J., and MARVIN, J., concur.

These three cases were heard on appeal from the common pleas court and involve the rights of the plaintiffs, as stockholders in the Cleveland Cable Railway Company, to stock in the Cleveland City Railway Company, which they claim is due them by reason of the consolidation of the former company with the Woodland Avenue and West Side Street Railway Company, the consolidated company being known as the Cleveland City Railway Company.

It is admitted that the plaintiffs in the three cases were stockholders in the cable company and have not received stock in the consolidated company in exchange therefor. While the claims in the three cases vary as to the number of shares alleged to be due to each plaintiff, the three cases were heard together and are to be decided upon the same principles.

Litigation growing out of the consolidation of said street railway companies has been before the Supreme Court and it is proper in stating these cases to quote largely from the case of *Railway Co.* v. *Bank*, 68 O. S., 582.

May 10, 1893, stockholders of the constituent companies, owning more than two-thirds of the stock of each, and including plaintiffs in these cases, entered into a preliminary agreement for consolidation, providing, among other things, that both companies should pay their own floating indebtedness, the stockholders of the cable company appointing Frank DeH. Robison and John J. Shipherd their agents and proxies to carry out the agreement and perfect said consolidation, agreeing to deliver to said two persons or their chairman, all their stock to be exchanged for stock of the consolidated company, and the stockholders of the Woodland Avenue Company in like manner appointing M. A. Hanna, Dan P. Eells and C. F. Emery, their agents and proxies, with like power.

May 11, 1893, the directors of the two companies entered into an agreement of consolidation in accordance with the stockholders' agreement, fixing the capital stock of the new company at 80,000 shares and providing that said stock should be distributed as follows: 51,750 shares to the Woodland Avenue Company to be distributed by it to its stockholders; 18,250 shares to the cable

company, to be disposed of by it, so far as necessary, to liquidate its floating indebtedness, and the remainder to be distributed among the holders of the common and preferred stock of said company, in proportion to the then relative value of said stocks; 10,000 shares to remain in the treasury of the company, to be issued by the board of directors according to law.

The cable company determined that one share of its preferred stock should be equal to five shares of its common stock; and on this basis, exchanging one share of preferred stock in the cable company for one share in the consolidated company, of the 18,250 shares distributed to the cable company, there would be 16,000 shares to be distributed to its stockholders, leaving 2,250 shares, of the par value of $225,000, to be sold to liquidate its floating debt. It later appeared, however, that said floating debt amounted to upwards of $400,000.

June 16, 1893, the consolidated company issued stock certificate No. 1 for 51,750 shares to M. A. Hanna, Dan P. Eells and C. F. Emery, trustees, and certificate No. 2 for 18,250 shares to Frank DeH. Robison and John J. Shipherd, trustees.

The Supreme Court in the case already referred to, had held that it was lawful for the directors of the constituent companies to agree, as they did, that the constituent companies should come into the consolidated companies free from debt; that of the stock apportioned to the cable company enough should be sold to pay its floating debt, the remainder to be distributed to its preferred and common stockholders in proportion to the relative values of said stocks; that the stockholders' agreement must be read into and made a part of the agreement of consolidation by the directors; and that the agreement that 18,250 shares of the capital stock of the consolidated company should be distributed to the cable company to be disposed of by that company so far as necessary to liquidate its floating indebtedness, the remainder to be distributed to its stockholders, was fully performed by the consolidated company by the issue of certificate No. 2 for 18,250 shares of stock to Robison and Shipherd, trustees, as "agents and proxies" for the cable company and its stockholders.

In the disposition of the cases before us we shall carefully follow all these holdings of the Supreme Court, although it has been

urgently contended by counsel for plaintiff that the last proposition, *i. e.*, that the delivery of certificate No. 2 to Robison and Shipherd, trustees, was a complete performance of the consolidated company's obligations to the stockholders of the cable company, was not necessarily involved in the decision of the bank case.

This contention is founded upon the statement of Judge Davis, who decided the bank case, that only one of the assignments of error would be noticed in the case because, on the conceded facts, the Supreme Court was of the opinion that the court of common pleas should have directed a verdict and rendered a judgment in favor of the defendant. Then, determining the rights of a person who holds shares of stock in pledge, assigned in blank, but not registered in the name of the pledgee, and holding that such pledgee is not entitled to participate in, or be notified of, the consolidation proceedings, as set forth in the third paragraph of the syllabus, it is stated, on page 599 of the opinion:

"The jury specially found in this case that on June 29, 1893, after the consolidation, Taintor & Holt (the pledgors), were still the owners of the stock and that on that date they received from the plaintiff in error all of the stock which they were entitled to receive by reason of their ownership of the cable company stock. It appears, therefore, the plaintiff in error having performed its agreement as to the registered and actual owners of the stock, that it is now sought to compel it to perform again, or account for the value of the stock, to a pledgee who has not shown that it was entitled to more than a mere lien upon the stock at the time of the consolidation."

It is urged that these are the conceded facts, in view of the law enunciated regarding the rights of an unregistered pledgee of stock, which should have required the common pleas judge to direct a verdict for defendant.

But having reached this conclusion Judge Davis goes forward with a consideration of the effect of the delivery of certificate No. 2 and enunciates the proposition hereinbefore stated and that proposition is embodied in the fourth paragraph of the syllabus and is therefore part of the law of the case, and hence to be followed by this court.

If the cases at bar are to be distinguished from the bank case it must be because of facts occurring and rights arising in favor of plaintiffs after the delivery of certificate No. 2.

In one salient feature these cases, of course, differ from the bank case: in that case the registered owners of cable company stock received all of the stock in the consolidated company which they were entitled to receive.

In these cases such registered owners have not received the stock in the consolidated company which it is conceded they were entitled to receive. It is said that plaintiffs have not received their stock because John J. Shipherd, one of their own trustees, appropriated it and converted it to his own use.

What are the facts as tending to sustain such statement?

The officers of the defendant company were M. A. Hanna, president; J. B. Hanna, secretary; F. DeH. Robison, vice-president; J. J. Shipherd, transfer agent, and the Savings & Trust Company, Registrar.

M. A. Hanna was one of the trustees for the Woodland Avenue Company and its stockholders; he was "trustee for construction account" for the defendant company and as such held certain shares of its stock; he, with Charles A. Otis and J. H. Wade, held stock for the defendant company, issued to them by it to indemnify them for money borrowed by them for use of the defendant company.

M. A. Hanna, as president, signed most of the stock certificates for the defendant; F. DeH. Robison, as vice-president, signed some.

The secretary, J. B. Hanna, signed all stock certificates; by direction of the board, the stock books were not kept by him, but by the transfer agent and registrar.

J. J. Shipherd was transfer agent of the defendant company and as such had entire charge of the issue and transfer of its stock, his direction alone being the authority upon which the registrar registered stock and kept track of the transfers. Shipherd was also one of the trustees for the cable road and its stockholders; he was chairman of said trustees; he was also "trustee for construction account" for the defendant company and as

such had stock issued to him in the name of "J. J. Shipherd, Trustee."

Certificates numbers one and two were issued to the trustees named in each, endorsed by them in blank, left with the transfer agent and by him lodged with the registrar.

Notices were sent to the stockholders of the Woodland Avenue Company and to the cable company to bring in their old stock to the transfer agent and get from him the new stock they were entitled to. If the defendant did not send the notices, it at least knew that they were sent. It thus appears that the transfer agent, whether as such, or as trustee for the cable company under written appointment, or as trustee for the trustees of the Woodland Avenue Company, by virtue of the delivery to him of certificate No. 1, endorsed in blank by said trustees, had entire control of the distribution of the entire 70,000 shares of stock going to both of the constituent companies, and in addition to this John J. Shipherd, trustee, held 5,000 shares of the treasury stock of the company duly issued and signed by the president of the company. These 7,500 shares of stock Mr. Shipherd, either as trustee for somebody, or as transfer agent, proceeded to mix up, and at least a majority of this court inclines to the opinion that the defendant company made it possible for Mr. Shipherd to produce the results he did and that it is responsible for such results.

However, such responsibility, under the pleadings in this case, does not determine the liability of the defendant company to these plaintiffs, unless it appears that when the stock books were finally straightened out there still remained in possession of the defendant company stock belonging to these plaintiffs and that when these suits were brought defendant had possession, or should have had possession of said stock.

Counsel for defendant, in argument, stated that "there was a mixing of this stock by Mr. Shipherd that is most difficult to unravel, and which would involve one in hopeless confusion who attempts its solution. Mr. Shipherd mixed the stock held by Robison and himself with the treasury stock of the company."

The matter *is* difficult and confusing, but the stock issued and transferred are all of record and have been patiently and tedi-

ously traced out by experts; so that we are satisfied from the evidence that Shipherd, out of certificate No. 2, which belonged to the cable company, distributed 3,100 shares to the Woodland Avenue stockholders, and to M. A. Hanna, Charles A. Otis and J. II. Wade, officers and trustees of the defendant company, he distributed 3,674 shares.

The 3,100 shares distributed by Shipherd to Woodland Avenue stockholders made good to them what he had appropriated and they were entitled to receive out of certificate No. 1, and relieved the defendant from that responsibility to them, under proper pleadings, which has been intimated above, arose out of its negligence in permitting Shipherd to confuse the stock.

The 3,674 shares out of certificate No. 2 which went to Hanna, Otis and Wade, they held as security for money borrowed by them for the company, and when the loan was paid, turned the stock back into the possession of the company; at least 2,000 shares, certificates Nos. 522 and 600, were assigned to the defendant company in proper form on the back of the certificate, and returned to the treasury of the company.

It hence appears from the evidence that after the delivery of certificate No. 2 to the trustees for plaintiffs and other stockholders of the cable company, part of the stock represented by that certificate came back into the possession of the defendant, and at least 2,000 shares of it was converted back into treasury stock. It also appears that at the beginning of these suits there were 4,000 shares of unissued stock in the treasury of the defendant company, all of which have been sold since by it.

It would seem that plaintiff's claims, which aggregate 513 shares, have been established and that they are severally entitled to recover the value of the stock claimed by them together with all dividends thereon, from which should be deducted, however, plaintiffs' *pro rata* share of the floating debt of the cable company.

Should it appear that there are other cable company stockholders not represented in these suits, who have not yet received stock they are entitled to, an accounting might be necessary, but no such facts have been presented to the court.

Decrees may be entered for plaintiffs in the three cases, the amount of recovery in each case to be computed as in the court below.