The record shows that the firms of which defendants were members -occupied plaintiff’s building under a three years’ lease in writing, from January I, 1889, -to January 1, 1892, and continued in occupancy thereafter until April, 1896.
Suit was brought to recover the rent for April and the succeeding months of 1896, upon the yearly tenancy, or “hold *469 over” contract for .the year 1896 presumed by-law from the continued occupancy into that year.
The petition admits a reduction of rent by an agreement made in 1894, from $100 to $83.33 per month, and payment up to April, 1896, with minor credits thereafter.
The trial record substantiates the allegations of -the petition, excepting in so far as the character of the tenancy may be affected by parol contract attempted to be proved by- defendants, as follows:
Corbin, a defendant, being upon the stand as a witness in behalf of defendants, was asked to state a conversation had by him with plaintiff,-Hafer, about the middle of January, 1894, “about the premises in question and the renting of them”; whereupon plaintiff’s- -counsel objected if it was sought thereby to establish orally a change in the contract of tenancy; and counsel for defendant thereupon admitted such to be the purpose of ¡the proposed testimony. The matter ivas argued to the court, who overruled the objection, to which plaintiff excepted, and the witness proceeded to testify as follows:
“I said ‘Mr. Hafer, we .are having a little difficulty down at our place and it it is more than likely that Mr. Mendel will go out, and, ’ says I, ‘ I want -to know from you if I can have that building.’ He said: ‘Corbin, I would as lief y-ou would have it as anybody else, He says-: ‘You can have it.’
‘ ‘ Q. What else was said at that time ? A. I said to him that I would take that building of him by the month at $100 a month, the same that the old firm had paid for the .building. He said: ‘You can have it.’ ” (Record p. 25.)
No other testimony of any kind was offered to establish any contract varying the annual tenancy created by holding over from year to year.
Before argument plaintiff’s attorney moved to rule out the - testimony of Mr. Corbin as- to the alleged conversation of January, 1894; which motion was denied.
Plaintiff’s counsel thereupon moved the court to instruct the jury to render a verdict for .plaintiff, which motion was also denied by the court; and to both denials exception was taken.
The same paints were- raised in special charges asked by plaint-' *470 iff and refused by the court, to which refusal exception was taken. In the general charge the court said, -among other things:
“The whole case depends upon whether, in 1896, the defendants were tenants for the year or were monthly tenants. * * * The written lease having expired on December 31, 1891, they (defendants) continued in possession during 1892 and 1893 * * * therefore from 1892 to 1893 the law would make them tenants from year to year * * * so, during the years- 1894, 1895 -and 1896, the tenants would be tenants from year to year, unless you should find there was an agreement made between Corbin and Bienfang or any one representing the firm ;and Mr. Hafer, by which the tenancy was changed from a yearly tenancy to a monthly tenancy; then from the -beginning of that next year, it would become a monthly tenancy. ’ ’
At the conclusion, in response -to a suggestion from counsel, the count further charged:
“They were so bound (by .a yearly tenancy during 1894) whatever they may have thought. The contract to change, if made in 1894, di-d not become legally operative until 1895. It continued in 1896 and so on”; and the genenal charge was excepted to by plaintiff.
1. The theory upon which the trial court based its charge to -the jury in reference to an “agreement between C-or-bin and Bienfang, or anyone representing them and Mr. Hafer, by which the tenancy was changed from a yearly tenancy to a monthly tenancy” to begin a year thereafter, is 'difficult to comprehend, since it must rest solely upon the alleged conversation of January, 1894, hereinbefore cited.
But, at that -time, the firm of Corbin, Mendel & Co. still existed, and were in possession of the premises under a tenancy for the entire year, which contract bound Hafer equally with themselves. Neither Corbin, in his own or any other behalf, nor Hafer, was then at .liberty to make ,a new lease of the premises; -and there is nothing whatever to indicate that Corbin spioke ■in any representative capacity for the new firm which was not then in -being.-
Corbin’s statement to Hafer began with the announcement of trouble at their place, and the likelihood of Mendel’s withdrawal. This meant, of course, a possible future disruption of *471 the partnership, but there was no intimation of the formation of the new partnership. He then proceeded to ask in substance, whether, upon the' happening of this contingency, -that is, the disruption of the existing partnership, he, Corbin, -could then obtain a lease, and Hafer expressed his assent.
But, in view of the existing status, this conversation could only be construed as ia tentative inquiry -on -one side, and an expression of willingness -on the other, with reference to future -possibilities; for, before a new lease -co-uld be made with Corbin, the -old lease must be abrogated .and this could only be effected by the joint action and consent of .the members of the old firm and ITafer, because the disruption of the partnership would not discharge the existing -contract nor relieve-the parties óf their joint and several liability under it.
But in fact -the -contemplated contingency never happened. Coincidently with the dissolution of the -old firm the remaining members formed a new partnership, which by common agreement succeeded to the rights and liabilities of -the old, including •the lease. There was, in fact, no change of possession since the possession which remained in Corbin and Bienfang as the remaining members of the old firm under the existing contract, eo instante vested -in them as a new firm in succession, by consent of Hafer. The tenancy thus remained continuous and unbroken entirely by virtue -of the assumption of -the old contract by the new firm. So that whatever -change may have been contemplated-by Corbin -and Hafer, in the conversation in question, was superseded by the subsequent action -of -the .parties-themselves, which continued -the original status.
There are other objections, arising under the rule placing the burden of proof upon the -defendants here to -establish n-ot only Corbin’s understanding of the alleged contract, but also that Hafer had the same understanding, f-o-r it is obvious that, in some respects at- least, their minds never met; but further reference to -this is unnecessary here.
For -all these reasons it is manifest that the testimony in question entirely failed to establish any agreement changing the tenancy as it theretofore existed; and the.jury "should have been instructed accordingly.
*472 2. But, even assuming the construction given the testimony by the trial court, it is subject to fatal objections under the statute of frauds.
If, as intimated by the court, the evidence tended to prove a contract made in January, 1894, but not to become “operative” until January 1, 1895, such contract was clearly within the statute of frauds. The statute is explicit in requiring a lease to be in writing, and it is elementary law that only delivery of possession will take a contract of lease oút of the statute. It follows, therefore, that a parol agreement for a lease to begin in the future made with one already in possession as tenant under a prior contract, is void (Armstrong v. Kattenhorn, 11 Ohio, 265; Crawford v. Wick, 18 Ohio St., 190; Gladwell v. Holcomb, 60 Ohio St., 427, 437). This result from the fact that possession, which alone can relieve the contract from the operation of the statute, can not -be given, because the landlord, having parted with possession under the subsisting contract, has it not in his power to give. “Possession,” as was said in Armstrong v. Kattenhorn, supra, p. 272, “must give the contract life.” See, also, Coke’s Littleton, 49 (b).
It was suggested in argument that the court below based its action upon Moore v. Harter, 67 Ohio St., 250. But the case of Moore v. Harter gives no support to the ruling. There the landlord gave notice of a change in the rent to take effect the next succeeding term, and the tenant held over without abjection. It followed, upon the principles established in the above cited cases, that the proposition of the landlord became a binding contract by the acceptance thereof by the tenant in and by the act of holding over; and, inasmuch as the act of holding over is in law equivalent to a new entry, possession was delivered and received by virtue of the new contract which was thereby taken out of the statute. But this is obviously and essentially different from a present contract for a lease to begin at a future time — which is involved in the case at bar and is void for the reason given, and for the further reason stated in Strong v. Schmidt, 15 C. C., 233, that while a parol agreement to surrender, if executed,-may be good by parol, an agrément to sur *473 render at a future time is within the statute and must be in writing — a distinction applicable to the case in hiand.
But it was within the statute and void also in another aspect. A tenancy "by the month,” or-"by the year,” is an "uncertain interest in lands,” in the purview,'Of the statute of frauds (Wood v. Lake, Sayer [K. B.], 3; see, also, reference to this case in 13 Mood. & Malk., 838, 849; Gladwell v. Holcomb, 60 Ohio St., 427, 433). In the ease of Gladwell v. Holcomb, supra, it is said that leases of uncertain duration, though strictly creating tenancies at will, were early construed as tenancies from year to year; and that the rule of notice grew out of the presumed intention of parties that such tenancy should be prolonged for an indefinite number of years, subject to the.right of either party to terminate. The same considerations apply to tenancy by the month; and it was therefore void.
But again, even if we apply the rule as to contracts that may be terminated within the year, still this alleged contract was not terminable, at the earliest, before January 31, 1895, and consequently was not to be performed within the year and falls within the inhibition of Section 4199, Revised Statutes.
It is true that there is a dictum of our Supreme Court, to be found in Grant v. Ramsey, 7 Ohio St., 157, 169, based upon Crosell v. Crane, 7 Barb., 191, intimating that the provision of Section 4199, Revised Statutes, in question, applies solely to contracts relating -to personalty and not to contracts relating to real estate. But Crosell v. Crane, supra, besides a similar holding in Taggard v. Rooseveld, 2 Smith (E. D.), 100, were subsequently overruled in Young v. Drake, 5 N. Y., 463, and Cayuga Ry. v. Niles, 13 Hun. (N. Y.), 170; and the weight of authority now holds all such contracts to be within the statute. Browne, Stat. of Frauds, 359.
The period of time under this provision of the statute begins with the making of the contract, namely, "the middle, of January, 1894,” and consequently the performance even for one month, January, 1895, would bring it within the statute. Cawthorne v. Cordrey, 13 Com. B. (N. S.), 406; Evans v. Rowe, L. R. 10 Q. B., 97; Abbott v. Inskip, 29 Ohio. St., 59; Myers v. Croswell, 45 Ohio St., 543.
Chas. B. Wilby, for plaintiff in error.
Chas. W. Baker, contra.
As to the short period of time between the “middle” of the month and the end of the month, the remarks of Lord Ellenborongh in an early ease are instructive. He said: “If we were to hold that a case which extended one minute beyond the time pointed out by the statute did not fall within its prohibition, I do not see where we should stop; for, in point of reahon, a period hi twenty years would equally not be within the act” (Browne, Stat. of Frauds; see, also, Rawlins v. Turner, 1 Ld. Raym., 736; Chapman v. Gray, 15 Mass., 439). So that, in whatever aspect the alleged contract, if any was made, be viewed, it is within the inhibition of the statute.
It is clear, therefore, that the court erred in not excluding •the evidence in question from -the jury and instructing a verdict and entering judgment accordingly. In a case of this kind it is the duty of this court upon reversal to render the judgment that should have been rendered by the court below. Cleveland City Ry. v. Bank, 68 Ohio St., 582.
Verdict set aside. Judgment below reversed and judgment •entered for plaintiff .in error (plaintiff below) for $-, with interest from the first day of the trial term. •