**AMERICAN TRUST LIFE INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19360.**

United States Court of Appeals
Fifth Circuit.

May 2, 1962.

Vernon Coe, Ira Lee Allen, Dallas, Tex., for appellant.

Joseph McElroy, Asst. U. S. Atty., Dallas, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Harold B. Sanders, Jr., U.

S. Atty., Dallas, Tex., Michael A. Mulroney, Burt J. Abrams, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, HUTCHESON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This appeal deals with the liability of the appellant Insurance Company, as transferee of Northwestern Security Life Insurance Company for certain transfer stamp taxes.

The claim against this appellant is asserted on the ground that it was the resulting corporation after a statutory merger with Northwestern Life Insurance Company, which, being the participating party in the transactions hereinafter related, will be referred to as the "Life Company."

In December, 1954, the Northwestern Security Trust Company, hereinafter called "Trust Company," was organized for the purpose of raising money to enable it to obtain the cash capital and surplus required to organize a life insurance company in Texas. In February, 1955, these efforts were successful, and $350,000 was transferred to the account of the Life Company by the Trust Company, whereupon the Life Company was organized with an authorized capital of 5,200 shares, of which 2,600 shares of no-par value common stock were issued to the Trust Company.[1]

On March 21, 1955, the Trust Company and the Life Company, upon authorization of their stockholders and directors, adopted an agreement between the two companies, which provided that the Trust Company would transfer all of its remaining assets other than its Life Company stock to Life Company, which would assume all Trust Company indebtedness. It also provided that after the transfer Trust Company was to be dissolved and the stock of Life Company owned by Trust Company would be distributed to Trust Company' shareholders. The agreement also provided that the

Life Company stock held by the Trust Company, after it was transferred on the books of the Life Company, was to be delivered to one J. D. Garner, who had been agreed upon between the two companies as a custodian for the benefit of the stockholders of Trust Company. It was further agreed that the articles of incorporation of Life Company were to be amended to change the amount of its capital stock from 5,200 shares to 1,560,000 shares. The Life Company was then to exchange 780,000 new shares for the 2,600 old shares then held by Garner, and Garner was then to distribute the new shares to the stockholders of Trust Company. Following this agreement, Trust Company transferred all its assets except the Life Company stock to the Life Company as contributed surplus. The dissolution certificate of Trust Company was filed on March 28, 1955. After that date, but before April 1, 1955, the 2,600 shares of Life Company stock were delivered to J. D. Garner, after custodial agreements had been entered into between Garner and Life Company and Garner and Trust Company. There was no written agreement between Garner and the stockholders. Thereafter, on April 4, 1955, the Life Company charter was amended by filing articles of amendment with the State Board of Insurance effecting an increase in the number of shares to 1,560,000. Thereafter Life Company delivered certificates for its 780,000 shares to Garner in return for the 2,600 old shares. He in turn caused to be delivered 780,000 shares in Life Company to the shareholders in proportion to the number of shares they had held in the Trust Company. These 780,000 shares were issued in the names of the stockholders of Trust Company and were not issued in Garner's name.

The Commissioner determined that documentary stamp tax was due arising from the transfer of 780,000 of Life Company stock from Trust Company to its stockholders. The relevant statute is Section 4321, Internal Revenue Code of 1954, 26 U.S.C.A. § 4321, and Section

---

1. This includes five qualifying shares issued to directors of the Life Company.

4342 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4342.[2] The Definitions section of the Code, Section 4351, 26 U.S.C.A.[3] is also of significance here.

Although the recitation of facts appears to show a complicated corporate arrangement, the legal issue is a fairly simple one. The taxpayer contends that when the Trust Company transferred its stock in Life Company to the custodian, Garner, this was a taxable transfer and that a tax on 2,600 shares was due. This amount was paid. It is contended that Garner acted as custodian for the stockholders, the ultimate recipients of the 780,000 shares, and when he surrendered the 2,600 shares for the new issue there was no additional taxable exchange, because the stockholders in effect surrendered 2,600 shares for 780,000 shares. In urging this point of view the taxpayer relies upon Section 4342(2) (A), footnote 2, in that it contends that the transfer from Garner to the stockholders of the 780,000 shares was a transfer "from such custodian to such owner."

The United States contends, to the contrary, that upon the transfer by Trust Company of its assets to Life Company as a part of an agreement whereby Life Company was to reissue 780,000 shares of stock for 2,600 shares, this gave rise to the obligation on the part of the Life Company to issue the new shares to Trust Company; that the agreement between Trust Company and Life Company to use Garner as a custodian for the stockholders was an agreement as to which the stockholders, the ultimate owners of the stock, were not a party and that Garner was, therefore, not "such a custodian" as contemplated under the above section of the Code, but he was a representative or custodian of Trust Company and remained such until he had acquired the new shares of stock which, on behalf of the Trust Company he then transferred to the stockholders of the Trust Company.

We have heretofore dealt with a somewhat similar question as to the taxability of the exercise by a corporation of the right to transfer its right to receive stock arising by reason of its transferring assets to the issuing corporation. See Legal Security Life Insurance Company v. United States of America, 5 Cir., 302 F.2d 315. As we pointed out in that case the United States Supreme Court in Raybestos-Manhattan Co. v. United

2. These two sections of the Internal Revenue Code are as follows:

"§ 4321. Imposition of tax

"There shall be imposed a tax on each sale or transfer of shares or certificates of stock, or of rights to subscribe for or to receive such shares or certificates, issued by a corporation, at the following rates:

\* \* \* \* \*

"(2) No-par-value stock.—Five cents on each share, except as provided in paragraph (3)."

"§ 4342. Fiduciaries and custodians

"The taxes imposed by sections 4321 and 4331 shall not apply to any delivery or transfer of any of the instruments referred to in such sections—

\* \* \* \* \*

"(2) Custodians.—

"(A) from the owner to a custodian if under a written agreement between the parties such instruments are to be held or disposed of by such custodian for, and subject at all times to the instructions of, the owner; or from such custodian to such owner; or

"(B) from a custodian as specified in sub-paragraph (A) to a registered nominee of such custodian, or from one such nominee to another such nominee, provided that in each instance such instruments are to be held by the nominee for the same purpose as if retained by the custodian; or from such nominee to such custodian." (26 U.S.C.A. §§ 4321, 4342.)

3. Section 4351 provides as follows:

"§ 4351. Definitions

\* \* \* \* \*

"(b) Sale or transfer.—For the purpose of this subchapter, the term 'sale or transfer' means any sale, agreement to sell, memorandum of sale or delivery, or transfer of legal title, whether or not shown by the books of the corporation or other organization (or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale); and whether or not the holder acquires a beneficial interest in the instruments." (26 U.S.C.A. § 4351).

States, 296 U.S. 60, at page 63, 56 S.Ct. 63, 80 L.Ed. 44, described the legal relationships arising when one stockholder transfers assets to an issuing corporation in return for issue of stock by the latter corporation. In that decision the Supreme Court said that:

> " * * * the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated. The new shares could not lawfully be issued to any other than the grantor corporation without its authority * * *."

We also pointed out in Legal Security Life Insurance Company, supra, what is, of course, apparent, that the corporation that transfers assets to an issuing company for stock has the legal right to designate others than itself as the recipients of the stock. However, in exercising the right to cause the shares to be issued to someone other than itself, the transferor of the property exercises a privilege which the taxing statutes seek to tax. In this connection we quoted the further language of the Supreme Court in the Raybestos-Manhattan Company case, supra:

> "Here the power to command the disposition of the shares included the right to receive them and *the exercise of the power which transferred the right* is subject to the tax." (Emphasis added.)

We think it is plain that if Garner was a custodian at all, he was such custodian as was mentioned in Section 4342(2) (A) in the sense that the transfer to him was a transfer from "the owner to a custodian,"—that is to say from Trust Company to Garner, because these were the only parties between whom a written agreement existed. Therefore, the transfer of the 2,600 shares from Trust Company to Garner was not a taxable transfer. However, when Garner surrendered the 2,600 shares to Life Company, it did so as the agent of Trust Company. Thus, when Life Company reissued the shares in the larger number in the names of the stockholders of Trust Company and delivered them to Garner for distribution, this was a transfer of the right to the shares exercised by Trust Company and carried out by Life Company; thus making both of them liable under the transfer tax act for the tax here sought to be imposed.

We conclude the trial court correctly held that the transfer from Garner to the stockholders did not fall within the exemption of Section 4342(2) (A), relating to transfers "from such custodian to such owner."

The judgment is

Affirmed.