UNION BANKERS INSURANCE COM-
PANY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19886.

United States Court of Appeals
Fifth Circuit.

May 22, 1963.

T. Everton Kennerly, Houston, Tex., Harry C. Weeks, Fort Worth, Tex., Edwin I. McKellar, Jr., Houston, Tex., Bracewell, Reynolds & Patterson, Kennerly & Lesher, Houston, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Lee A. Jackson, Donald P. Horwitz, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., H. Barefoot Sanders, U. S. Atty., Joseph McElroy, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The question presented is whether there is a vicarious transfer subject to the stamp tax under § 4321[1] when the stock issued by the Surviving Corporation as payment for the assets acquired from the Absorbed Company is rateably distributed directly to the stockholders of the Absorbed Company rather than to it for redistribution in liquidation. While the unsuccessful Taxpayer perhaps challenges the entire notion that a taxable transfer ever takes place in a statutory merger, that battle is an uphill one, and so far, the law is pretty much against it. All going back to the wellspring, Raybestos-Manhattan Co. v. United States, 1935, 296 U.S. 60, 56 S. Ct. 63, 80 L.Ed. 44, at least two decisions involving classic statutory mergers hold there is a theoretical transfer,[2] as do a number of others concerned with intracorporate successor rearrangements[3] and our two very recent cases of unquestioned authority and correctness relating to the transfer of all assets of a fund-raising corporation in exchange for the stock of a newly created Texas life insurance corporation.[4] The theory, broadly stated, is that when a corporation in situations of this kind transfers its assets, it alone

---

[1]. 26 U.S.C.A. § 4321. Imposition of Tax.
"There shall be imposed a tax on each sale or transfer of shares or certificates of stock, or of rights to subscribe for or to receive such shares or certificates, issued by a corporation, at the following rates:

\* \* \* \* \*

"(2) No-par-value stock.—Five cents on each share, except as provided in paragraph (3).

\* \* \* \* \*

"§ 4343. Transfers by operation of law

\* \* \* \* \*

"(b) Nonexempt transfers.—No delivery or transfer shall be exempt because effected by operation of law unless an exemption is otherwise specifically provided.

"§ 4351. Definitions.

\* \* \* \* \*

"(b) Sale or transfer.—For the purpose of this subchapter, the term 'sale or transfer' means any sale, agreement to sell, memorandum of sale or delivery, or transfer of legal title, whether or

not shown by the books of the corporation or other organization (or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale); and whether or not the holder acquires a beneficial interest in the instruments."

[2]. American Processing & Sales Co. v. Campbell, 7 Cir., 1947, 164 F.2d 918; Western Massachusetts Electric Co. v. United States, D.C.Mass., 1951, 101 F. Supp. 544.

[3]. Jefferson Lake Sulpher Co. v. United States, 5 Cir., 1952, 195 F.2d 1012, cert. denied, 344 U.S. 818, 73 S.Ct. 13, 97 L. Ed. 636; American Mail Line v. United States, 1951, 101 F.Supp. 364, 121 Ct.Cl. 63.

[4]. American Trust Life Insurance Co. v. United States, 5 Cir., 1962, 303 F.2d 234; Legal Security Life Ins. Co. v. United States, 5 Cir., 1962, 302 F.2d 315; see also Orpheum Bldg. Co. v. Anglim, 9 Cir., 1942, 127 F.2d 478, 482.

is entitled to receive the stock issued by the acquiring (Surviving) corporation, and its direction to distribute the stock to another (its own stockholders) is, in practical effect, the equivalent of its having first received the stock and then redistributed it to stockholders. Faced with this formidable historical development, the Taxpayer wisely narrows the attack. Its contention essentially is that by virtue of Texas Statutes regulating life insurance companies—including their merger—the Absorbed Company had no *right* to receive the stock issued by the Surviving Corporation, and hence there was no transfer of the Raybestos-Manhattan type. We agree and reverse.

The underlying facts (all of which were stipulated before the District Court) may be severely capsulated for our purposes. Guaranty National [5] and Southwest American [5] were two separate corporations engaged in the life insurance business in Texas. The two were substantially owned by the same controlling stockholders. After proper stockholder action under Texas law, Guaranty National and Southwest American entered into a Merger and Consolidation Agreement.[6] This Agreement made April 3, 1956, was formally approved by the Board of Insurance Commissioners as required by Texas law. Texas, as is generally true elsewhere, severely regulates life insurance companies. Under the Agreement, Guaranty National was to be the Absorbed Company and Southwest American was to be the Surviving Corporation. All of the assets of the Absorbed Company were to be transferred to the Surviving Corporation in exchange for specified amounts of its stock to be issued directly to the stockholders of the Absorbed Company. After approval by the State authorities, the transaction was carried out. The Surviving Corporation took over all of the assets of the Absorbed Company, assumed all of its liabilities as the Insurance Code prescribed, and over a period of time (1956–57) issued 2,047,817 shares of its previously authorized capital stock directly to the stockholders of the Absorbed Company. None of the certificates evidencing ownership of the 2,047,817 shares of stock was actually issued to the Absorbed Company. The documentary stamp tax imposed by § 4301 on the original issuance of this stock by the Surviving Corporation was paid, and no question exists as to it. The Commissioner, however, determined that the transfer of its assets by the Absorbed Company to the Surviving Corporation in return for the issuance by it of stock to the Absorbed Company's stockholders constituted the transfer by the Absorbed Company to its own stockholders of its right to receive the stock of the Surviving Corporation.[7]

■■ At the outset, we do not regard this case as posing any real question of

---

5. Guaranty National Life Insurance Company; Southwest American Life Insurance Company. We disregard, as unimportant here, corporate transmutations begetting finally appellant Union Bankers Insurance Company.

6. Article 21.25 (though markedly amended in 1961), V.A.T.S. at the time of this merger provided:

"Any two (2) or more insurance companies doing a similar line of business which are and have been substantially owned by same controlling stockholders * * *, and where all of them have been previously organized under the laws of this State, may unite or consolidate upon compliance with the terms of this law. * * * Before any such consolidation shall take place, the parties holding at least two-thirds of the capital stock of each of the companies shall vote in favor thereof at a separate meeting of the stockholders of each company called for such purpose. * * *" Acts 1951, 52nd Leg. Ch. 491, based on Art. 5040, R.S.1925.

7. As this transaction took place prior to successive amendments markedly changing the basis of valuation, the tax paid amounted to $102,390.85, or approximately 30% of the actual value of the stock. The stipulation stated that the Commissioner " * * * determined in substance and effect that said 2,047,817 shares *in a theoretical transaction* had been issued directly to [the Absorbed Company] by [the Surviving Corporation] * * *."

supremacy of federal over Texas law. The parties are in essential agreement on it. Local law is important.[8] But in the final analysis whether the transaction, valid as it is under Texas law, constitutes a transfer within the meaning of this revenue measure is a federal question. The controlling and federal question is whether or not a particular interest or right was the object intended to be taxed. Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 81, 60 S.Ct. 424, 84 L. Ed. 585.

 With that approach, it is helpful to consider the Supreme Court's description of the purpose and reach of this Act. Because not directly involved as it is here, these words perhaps have been obscured in former decisions by the continual reliance on those portions which we have so recently re-emphasized.[9] Basic to our problem, the Court stated:

> "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and invested in another." 296 U.S. 60, 62, 56 S.Ct. 63, 64, 80 L.Ed. 44.

Translating that in terms of this case, if the Absorbed Company had "the right to be or become a shareholder" in the Surviving Corporation "or to receive any certificate of any interest in its property", then surrendering that to vest in another (the Absorbed Company stockholders) is a taxable transfer. Conversely, if the Absorbed Company did not have that right, then the issuance of stock direct to its stockholders does not amount to a transfer. In that situation there would have been no bypass.

Actually this is also implicit in the more frequent quotations (see note 9, supra). If it is borne in mind that Congress seeks only to tax transfers of stock, then it is clear that when the Court speaks of the "generating source" being the "conveyance * * * of the property" for which new shares "could not lawfully be issued" to one other than the Absorbed Company without its authority, it is discussing matters of non-federal law. In other words, it is within the competence of the local law alone[10] to determine the circumstances under which assets of incorporated entities may be transferred and how and in what manner the consideration therefor is to, or may, be paid. In every case so far (see notes 2, 3, and 4), the Court in finding a taxable transfer was justified in holding on the basis of the pertinent local law that the Absorbed Company had the right to receive and hence the right to

---

8. The Taxpayer urges Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 81, 60 S. Ct. 424, 84 L.Ed. 585; Crooks v. Harrelson, 1930, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156; Phillips v. Commissioner, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L. Ed. 1289; and the community property cases: Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Goodell v. Koch, 1930, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247; Hopkins v. Bacon, 1930, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; Bender v. Pfaff, 1930, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; and Commissioner v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126.

9. In both American Trust Life Insurance Company and Legal Security Life Insurance Company, note 4, supra, we repeated the familiar quotation from Raybestos-Manhattan, 296 U.S. 60, 63, 56 S.Ct. 63, 65, 80 L.Ed. 44:

"* * * the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated. The new shares could not lawfully be issued to any other than the grantor corporation without its authority * * *." (See 303 F.2d 234, 237 and 302 F.2d 315, 317.)

And in one of them (303 F.2d 234, 237) we repeated an additional quotation:

"Here the power to command the disposition of the shares included the right to receive them and the exercise of the power which transferred the right is subject to the tax." 296 U.S. 60, 64, 56 S.Ct. 63, 65, 80 L.Ed. 44.

10. Of course, this is absent circumstances raising federal due process constitutional questions.

direct the disposition of stock issued in payment for assets.[11]

■ This brings us face-to-face with Texas law. Does Texas permit a life insurance company "to be or become" a stockholder of another life insurance company? Does Texas permit a Texas life insurance company "to receive any certificate" of ownership in the property of another life insurance company? The negative answers to these and related matters are emphatic.

First, as to investments, the Texas Insurance Code through a combination of negative prohibitions and affirmative authorizations rigidly confines ownership of stock of another life insurance company to a small portion of its "capital, surplus and contingency funds" in a comparable small portion of the capital stock of another insurance company whose "principal business is the reinsurance * * * of risks ceded to it" by others. No others are permitted.[12] This strong policy against pyramiding ownership in life insurance companies through the obvious process of mergers or consolidations is carefully preserved by restrictions of what companies may consolidate (see note 6, supra) and the *manner* in which such consolidation is to be carried out and the consideration paid for the assets transferred. Thus no such consolidation may take place until "at least two-thirds of the capital stock of each of the companies shall vote in favor thereof at a separate meeting of the stockholders of each company called for such purpose." Art. 21.25. And if stock of the Surviving Corporation is to be used as payment for the assets transferred, the Insurance Code carefully confines the issuance of such stock "to the stockholders of * * * the companies consolidated."[13]

11. The Taxpayer is correct in pointing out that in Raybestos-Manhattan, that part of the consolidation of three separate corporations into one did not determine whether there was a taxable transfer as to distribution of stock of the Surviving Corporation to stockholders of Manhattan Rubber Manufacturing Company which alone merged into Raybestos-Manhattan. As the Seventh Circuit observed, American Processing & Sales Co. v. Campbell, supra, 164 F.2d 918, 919, the Supreme Court did not deal with the merger problem. The case dealt with acquisition of assets of two other, but non-merging, corporations identical, for all practical purposes, with our two recent decisions, see note 4, supra.

12. Texas Insurance Code, Art. 3.39 Authorized Investments for "Domestic" Companies.

"A life insurance company organized under the laws of this State may invest in or loan upon the following securities, and none other, viz: * * *

"5. It may invest not to exceed ten (10%) per cent of its capital, surplus, and contingency funds, in not more than twenty (20%) per cent of the capital stock of any other insurance company, now or hereafter organized under this chapter, whose principal business is the reinsurance, either partially or wholly, of risks ceded to it by other life insurance companies. The investment herein authorized may be made by purchase of stock then issued and outstanding or by subscription to and payment for the increase in the capital stock of such reinsurance corporation."

This transaction would not qualify under § 5. The Merger Agreement provided that on consummation of the merger, the Surviving Corporation would increase its authorized shares from 1,708,782 shares to 5,000,000 shares. Hence the amount issued to stockholders of the Absorbed Company (2,047,817) comprised approximately 40% of the capital stock of such "other insurance company." The "principal business" of the Surviving Corporation was not "reinsurance * * * of risks ceded to it by other life insurance companies."

13. Art. 21.26 Consolidation, § 1:

"Such companies proposing to consolidate may unite their assets, or any part thereof, and become incorporated in one body under the name of any one or more of such companies * * * and issue stock in such corporation to the stockholders of each of the companies consolidated, the actual value of which stock in the new company shall bear the same proportion to the actual value of the stock surrendered by such stockholders as the entire assets of the company surrendering such stock bears to the entire assets of the new company * * *; or

"Sec. 2. One company may take over all the assets of the other companies proposing to consolidate and issue stock to

Indeed, these Texas policy strictures against ownership momentary or permanent, of stock in another life insurance company are made manifest by events occurring subsequent to the time (1956–1957) of these transactions. There have been major amendments to Art. 21.25 and 21.26, the most notable, for our purposes, being an express statutory recognition that prior to these amendments, Art. 3.39 —meant exactly what it said—the acquisition of the stock of one life insurance company by another life insurance company was positively forbidden.[14]

▆▆▆▆ While the Taxpayer emphasized as the critical thing that it is the action of the stockholders, initiated in special meetings called for such purpose, the result of which presumably might freeze out dissident stockholders, we do not base our conclusion on that. Important as is the action of the stockholders, the fact that the two corporations through their respective Boards of Directors and Officers were to, and did, take important action does not alter our view. Paraphrasing the Supreme Court, one might even assume that in this particular case the Merger and Consolidation Agreement and the corporate action of each of the two companies to effectuate it was "the generating source of the right to receive the newly issued shares of" the Surviving Corporation. For it must be remembered that Congress did not undertake by § 4321 to tax the initiation and execution of transactions which brought about the exchange of assets of one corporation for newly issued stock of another.[15] All we are concerned with is a transfer of any stock *after* issuance by the Surviving Corporation. Without a doubt, corporate action of an essential and effective kind was taken by each through instrumentalities other than stockholders as such. But there is a transfer subject to the stamp tax only if, under the law of Texas, in the execution of that corporate devised plan for exchange of assets for stock, the Absorbed Company had the right to acquire such shares of stock and, having such right, it chose to direct their disposition of stock to others.

Since under Texas law the Absorbed Company had no such right and for it to have acquired such shares even momentarily would have violated a sharply

their stockholders in the proportion that the value of their stock bears to the entire value of the assets of the company in which they are stockholders, and for this purpose the capital stock of such purchasing company may be increased, as now or may be hereafter provided by law. * * * * * * *

"Sec. 4. Such consolidation shall work a dissolution of the companies absorbed [but without prejudice to rights of creditors, pending litigation, etc.] * * *.

"Sec. 5. All policies of insurance outstanding against all such companies shall, by reason of such consolidation, be assumed by the reorganized company, * * *." Acts 1951 52nd Leg. ch. 491.

14. Thus, in the amendment to Art. 21.25, authority to merge or consolidate is considerably broadened. Subject to specified limitations, it is controlled generally by the "Texas Business Corporation Act." Most important, new § 7 now provides: "One insurance corporation may purchase or contract to purchase all or part of the outstanding stock of another insurance corporation as a part of a plan of merger or consolidation. The provisions contained in Article 3.39 of the Insurance Code which limits investments in the corporate stock of another corporation shall not apply provided that such purchase or contract to purchase shall be subject to the following conditions or limitations. [here follows specified conditions (a) through (f)]."

Equally important amended Art. 21.26 now authorizes "a life insurance corporation * * * to purchase all or part of the outstanding shares of another life insurance corporation * * * doing a similar line of business for the purpose of reinsuring all of the business of such other insurance corporation * * *." And again recognition is taken of Art. 3.39. "The provisions contained in Article 3.39 of the Insurance Code limiting investments in the purchase of the corporate shares of another corporation shall not apply to such purchase or contract to purchase provided that: [here follow conditions (a) through (f)]."

15. This is taxable as an original issue under § 4301.

defined policy of Texas, the transaction may not in this unusual situation be viewed as though the stock was first received and then redistributed.[16]

Reversed.

16. We carefully limit this holding to statutory prohibitions on the right to be or become stockholders or receive stock. If, under local law, such right exists, the relinquishment of such right by private contract would be "the exercise of the power" to "command the disposition of the shares" and hence subject to tax. 296 U.S. 60, 64, 56 S.Ct. 63, 65, 80 L.Ed. 44.