**UNION OIL COMPANY OF CAL-
IFORNIA**

v.

**The UNITED STATES.**

No. 700–71.

United States Court of Claims.

June 20, 1973.

Nichols, J., concurred with opinion.

Skelton, J., dissented with opinion.

Carl Estes, II, Houston, Tex., for plaintiff. Marvin K. Collie, Houston, Tex., attorney of record. Thomas P. Marinis, Jr., and Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., of counsel.

Allan C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen., Scott P. Crampton, Washington, D. C., for defendant. Gilbert E. Andrews and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

OPINION

COWEN, Chief Judge:

In this tax refund suit, which is before the court on a stipulation of facts by the parties for a decision on an issue of law, plaintiff seeks to recover $233,912.32 in Federal Documentary Stamp Taxes collected under Section 4321 of the Internal Revenue Code of 1954. We have concluded that the plaintiff is not entitled to recover.

The basic facts material to the resolution of the issue before the court may be briefly summarized. On April 29, 1965, plaintiff Union Oil Company of California (Union), a California corporation, entered into an Agreement of Merger with the Pure Oil Company (Pure, a corporation organized under the laws of the State of Ohio. Under the terms of the Agreement, which was written in conformance with the applicable statutory provisions of California and Ohio, Pure was to be merged into Union by a transfer of all of Pure's corporate assets to Union, subject to the approval of the stockholders of each corporation as required by local state law. The Agreement further provided that each outstanding share of Pure's common stock was to be converted into one share of the cumulative convertible preferred voting stock of Union on the effective date of the merger. The shareholders of the

two corporations duly approved the Agreement of Merger. On July 16, 1965, in accordance with the Agreement, Pure merged into Union, and Union issued 9,953,715 shares of its cumulative convertible preferred voting stock directly to the former shareholders of Pure.

It is the position of the Government that the merger of the two corporations involved two transactions subject to the imposition of Federal Documentary Stamp Taxes. The first such transaction, the issuance by Union of 9,953,715 shares of its capital stock, required payment of $584,780.80 of original issue stamp taxes under Section 4301 of the 1954 Code. Plaintiff concedes that the latter tax was properly assessed. The Government further asserts that plaintiff was liable for an additional $233,912.32 of transfer stamp taxes imposed by Section 4321 of the 1954 Code,[1] based on the implied transfer by Pure to its own shareholders of the right to receive 9,953,715 shares of Union stock issued in exchange for the assets of Pure. It is the assessment of the Section 4321 transfer stamp tax that plaintiff challenges here. Defendant asserts that Treasury Regulation (26 C.F.R.) Section 47.4321–2(a)(9) is controlling. That regulation provides:

§ 47.4321–2 *Illustrations.*

(a) *Sales and transfers subject to tax.* The following transfers of stock are illustrations of transactions which are taxable, unless exempt from tax under a specific provision of the Internal Revenue Code * * *:

\* \* \* \* \* \*

(9) In addition to the tax on the issuance of stock in connection with a merger or consolidation, where such stock is issued directly to the stockholders of the merging or consolidat-

ing corporations by the continuing or consolidated corporation * * *, there is also a transfer tax imposed at the time of the issuance of such stock. *The transfer tax is applicable to such a transaction inasmuch as there is involved the transfer to the stockholders of the merging or consolidating corporations of such corporations' right to receive the stock of the continuing or consolidated corporation.* * * * [Emphasis added.]

Simply stated, the Government's theory is that the nonsurviving corporation, here Pure, initially had the right to receive the capital stock of Union issued in exchange for the assets of Pure. This is because the corporation, rather than its individual stockholders, is the owner of the corporate assets. *See* H. Henn, Law of Corporations § 79 (2d Ed. 1970). Consequently, when Union and Pure agreed that incident to their merger Union would issue its capital stock directly to the shareholders of Pure, the merging corporation, there was an implied transfer by Pure to its own stockholders of the right to receive the Union capital stock. Defendant finds support for its position and for the above-quoted regulation, in the decision of the Supreme Court in Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S. Ct. 63, 80 L.Ed. 44 (1935). In that case the corporate taxpayer was organized under the laws of New Jersey as part of a plan of consolidation. Pursuant to the consolidation agreement, two preexisting corporations transferred their assets to the taxpayer and in return the taxpayer issued its capital stock directly to the shareholders of the two consolidating corporations. The Internal Revenue Service assessed both original issue and transfer stamp taxes on the transactions. The transfer tax was assessed, as here, on the implied transfer by the con-

---

[1]. At the time of the merger, § 4321 (since repealed, effective January 1, 1966, by the Act of June 21, 1965, Pub.L. No. 89–44, § 401(a), 79 Stat. 148) provided, in pertinent part, as follows:

"Sec. 4321. *Imposition of tax*
There is hereby imposed on each sale or transfer of shares or certificates of stock, or of rights to subscribe for or to receive such shares or certificates, issued by a corporation, a tax * * *."

solidating corporations to their stockholders of the right to receive the stock of the new corporation. In construing the transfer stamp tax statute, similar to Section 4321, the Court held that when the act referred to transfers, it did not mean exclusively an actual transfer from the hand of the transferor to that of the transferee. The statute also referred to the relinquishment of a right by one party and the vesting of the same right in another. The Court stated:

> * * * In the present case the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated. The new shares could not lawfully be issued to any other than the grantor corporation without its authority, and that authority could not be exercised for the benefit of third persons other than its own assenting stockholders. The consolidation agreement thus imposed the duty on petitioner to issue the new shares upon receipt of the property, *and at the same time made disposition to the stockholders of the two corporations of the correlative right to receive the stock.* [296 U.S. at 63, 56 S.Ct. at 65; emphasis added.]

The Court concluded that there was not "even a technical difference of any significance" for Federal tax purposes whether the shares were issued first to the consolidating corporations and later transferred to their stockholders, or whether the initial issuance of the stock and the transfer thereof to the shareholders of the consolidating corporations were effected in the single consolidation agreement. Although the *Raybestos-Manhattan* case arose in the context of a corporate consolidation, its principles have been applied in the traditional merger situation. U.S. Industrial Chemicals, Inc. v. Johnson, 181 F.2d 413 (2d Cir. 1950); American Processing & Sales Co. v. Campbell, 164 F.2d 918 (7th Cir. 1947), cert. denied, 333 U.S. 844, 68 S.Ct. 661, 92 L.Ed. 1127 (1948); Ameri-

can Mail Line, Ltd. v. United States, 101 F.Supp. 364, 121 Ct.Cl. 63 (1951); Western Massachusetts Elec. Co. v. United States, 101 F.Supp. 544 (D. Mass.1951).

Plaintiff recognizes that *Raybestos-Manhattan* and the cases following it are controlling as to the applicability of the transfer stamp tax in the usual merger situation. However, plaintiff asserts that the critical factor in each of those cases was that under the applicable state laws respecting mergers and consolidations, the nonsurviving corporation in a merger or consolidation had the right to receive and the correlative right to control the disposition of the stock issued in exchange for its assets by the continuing corporation. Thus, plaintiff contends that, while the application of the transfer stamp tax to a particular transaction is a question of Federal law, the form of the transaction is controlled by state law and the tax is assessed on the basis of state-created relationships. Plaintiff also maintains that the law of Ohio with respect to mergers and consolidations, which was applicable to the merger of Pure into Union, prohibits the merging or nonsurviving corporation from receiving or controlling the disposition of the shares issued by the continuing corporation. Consequently, says plaintiff, the shareholders of the merging corporation have the exclusive right to receive such stock. The law of Ohio, plaintiff argues, precludes the possibility of any actual or implied transfer by the merging corporation to its stockholders of the right to receive the shares of the continuing corporation, and the transfer stamp tax of Section 4321 cannot be imposed.

Plaintiff claims support for its basic position in the decision of the United States Court of Appeals for the Fifth Circuit in Union Bankers Insur. Co. v. United States, 317 F.2d 598 (5th Cir. 1963). That case concerned the merger, in accordance with the law of the State of Texas, of two Texas insurance corporations. The agreement of merger directed the issuance of the stock of the

continuing corporation directly to the shareholders of the merging corporation in exchange for the assets of the latter. The Internal Revenue Service assessed the Section 4321 transfer stamp tax on the basis of the implied transfer by the merging corporation to its shareholders of the right to receive the capital stock of the continuing corporation. The court of appeals reversed the decision of the district court in favor of the Government. The court noted that Texas, like most other jurisdictions, stringently regulates by statute the activities of insurance companies doing business in the state. The court then concluded that the provisions of the Texas Insurance Code prohibited one insurance corporation from owning, possessing, or controlling the capital stock of any other insurance company at any time, even momentarily. Consequently, the court decided that in a merger situation, the acquired corporation had no right to receive, and no right to control the disposition of, the capital stock issued by the continuing corporation where both were insurance corportaions. Thus, the court disallowed the imposition of the transfer stamp tax on the ground that "in this unusual situation" the applicable Texas law rendered impossible any transfer by the merging corporation to its shareholders of the right to receive the stock of the continuing corporation

Turning to the law of Ohio pertaining to mergers and consolidations, plaintiff concedes that, unlike the Texas Insurance Code in *Union Bankers,* no provision of the Ohio statutes expressly precludes the acquired corporation in a merger from receiving or controlling the shares of the continuing corporation issued in exchange for its assets. However, plaintiff asserts that several of the merger and consolidation provisions can reasonably be read to support such a

prohibition and that the courts and commentators in Ohio have so construed the statutes. We have considered the Ohio authorities and hold that they do not support plaintiff's theory of recovery.

The provisions of the Ohio statutes regarding corporate mergers and consolidations are found at Sections 1701.78 through 1701.85 of the Ohio Revised Code.[2] Plaintiff particularly relies on Sections 1701.78(B)(10) and 1701.-81(A)(1), which provide, in pertinent part, as follows:

> § 1701.78  *Merger and consolidation procedure.*
>
> \*    \*    \*    \*    \*    \*
>
> (B) To effect such merger or consolidation, the directors of each constituent corporation shall approve an agreement \* \* \*, which agreement shall set forth:
>
> \*    \*    \*    \*    \*    \*
>
> (10) \* \* \* [T]he manner and basis of making distribution to shareholders of the constituent corporations, which distribution to shareholders of any of the constituent corporations, in extinguishment of or in substitution for shares of such constituent corporations, may be by way of shares \* \* \* of the surviving or new corporation \* \* \*.
>
> \*    \*    \*    \*    \*    \*
>
> § 1701.81  *Effect of merger.*
>
> (A) When such merger or consolidation becomes effective:
>
> (1) The separate existence of all the constituent corporations, except the surviving or new corporation, shall cease \* \* \*.

Plaintiff argues that under Section 1701.81(A)(1) a corporation which has ceased to exist as a separate legal entity on the effective date of the merger cannot, as a matter of inexorable logic, be the recipient of the stock issued by the

2. The merger and consolidation provisions of the Ohio statutes are not unique. Substantially similar provisions have been enacted in other jurisdictions. *E. g.* Burns' Ind.Stat.Ann. §§ 25–230 through 25–236, IC 1971, 23–1–5–1 to 23–1–5–7; Smith-Hurd Ill.Ann.Stat., c. 32, §§ 157.61 through 157.70; Ky.Rev.Stat. §§ 271.465 through 271.490; and Corporations Code, West's Ann.Calif.Codes, §§ 4100 through 4124.

surviving corporation. Therefore, plaintiff asserts the Ohio legislature has provided in Section 1701.78(B)(10) that prior to the effective date of the merger, the agreement of merger *must* provide for distribution of the shares of the surviving corporation directly to the stockholders of the merging corporation. Since only the stockholders, under this reading of the statutes, have the right to receive the stock, there can be no taxable transfer of that right. While conceding that this is not the reasonable construction of the statutes, plaintiff contends that it has been the interpretation thereof made by the Ohio courts.

Plaintiff refers us to Robison v. Cleveland City Ry. Co., 13 Ohio Dec. (10 Nisi Prius Rep.) 1 (Cuyahoga Common Pleas 1902). Plaintiff asserts that in that case, the court held that an agreement of consolidation providing for the issuance of the shares of the new corporation to the acquired corporation itself was invalid or unenforceable. That the *Robison* case represents the current law of Ohio, plaintiff suggests, is indicated by the statement at 13 Ohio Jur.2d, Corporations § 810 (1955), which provides in part, as follows:

> * * * The shares of the new company must be delivered or distributed directly to the shareholders of the constituent corporations or their authorized agents. A delivery of the shares to the constituent corporations cannot be made, inasmuch as after the consolidation or merger becomes effective those corporations do not remain in existence for any such purpose. (Footnotes omitted.)

The commentary cites only the *Robison* case as authority for the quoted proposition.

We do not believe, however, that the Ohio statutes preclude the existence of an implied transfer by the merging corporation to its shareholders of the right to receive the stock issued in exchange for its assets by the surviving corporation. To the contrary, we think that the Ohio statutes recognize the existence of such a transfer and require that it be effected in the terms of the agreement of merger executed by the corporations involved and approved by their stockholders, prior to the effective date of the merger. It is especially significant that in Section 1701.78(B)(10) of the Ohio Revised Code, *supra*, the statute requires the directors of the corporations to specify in their agreement the manner by which the shares of the continuing corporation will be issued to the former shareholders of the merging corporation. It seems clear that the statute thereby acknowledges the power of the merging corporation to direct the disposition of the shares given in exchange for its assets, and by implication, the underlying right of the merging corporation to receive those shares.

The provision of Ohio law that the separate existence of the merging corporation will cease is not unique; that is the usual result of a corporate merger. This point indicates the critical fallacy of plaintiff's argument. It is precisely because the merging corporation will cease to exist that the legislatures of the states normally require that such details as distribution of the stock of the surviving corporation be worked out prior to the effective date of the merger. Virtually the same argument as that made by the present plaintiff was before the Seventh Circuit in American Processing & Sales Co. v. Campbell, *supra*. That case involved a merger in accordance with the law of the State of Illinois which is substantially similar to the Ohio statute, and the agreement for the merger closely resembles the agreement for the merger of Pure and Union. As here, the main issue was the propriety of the assessment of the transfer stamp tax. The taxpayer argued that under Illinois law the merging corporation went out of existence and had no right to receive the stock of the continuing corporation; therefore, it had nothing to transfer to its stockholders. The court rejected this contention, noting that *prior to* the effective date of the merger the two corporations, with the consent

of their stockholders, had adopted a plan of merger providing for the transfer of the assets of the merging corporation to the surviving corporation. The quid pro quo of this transfer of assets was to be the issuance of stock by the continuing corporation to the former shareholders of the merging corporation. Consequently, the shareholders acquired the right to receive the stock by virtue of the terms of the agreement of merger between the corporations. Therefore, the court decided that the agreement effected a transfer of the right to receive the stock within the meaning of the taxing statute.

Similar principles were applied in the case of a vertical merger in U.S. Industrial Chemicals, Inc. v. Johnson, *supra*. *See also,* American Mail Line Ltd. v. United States, *supra*, 101 F.Supp. at 368–369, 121 Ct.Cl. at 74–76.

The *Robison* case in the Ohio Common Pleas Court, on which the plaintiff relies, was one of several suits brought against Cleveland City Railway Company (Railway) by the shareholders of the Cleveland City Cable Railway Company (Cable) following the consolidation between Cable and another company to form the Cleveland City Railway Company. The merging corporations entered into a consolidation agreement which provided that 18,250 shares of the new corporation were to be issued to Cable. After a sufficient number of the shares were sold to liquidate its indebtedness, Cable was to distribute the remainder among its stockholders. Pursuant to the agreement, Railway delivered to Robison and Shipherd, who had been appointed agents of the shareholders and of Cable, a certificate representing the 18,250 shares. After the receipt of the certificate, Shipherd wrongfully converted some of the shares to his own use. Thereafter, Robison sued Railway for the recovery of his shares of stock that had been converted. One of the defenses raised by Railway was that the consolidation agreement authorized it to deliver the stock to Cable company for distribution by it to its shareholders and

that Railway had therefore discharged its obligation. The Common Pleas Court rejected this defense and held that under the Ohio statute "the new stock could be delivered only to individual holders or their authorized agents." It is upon this portion of the court's decision that plaintiff places its principal reliance.

The question which the Common Pleas Court had to decide was whether the new corporation was liable to the shareholders of one of the merging corporations for the negligent misdelivery of the stock to the person who wrongfully converted it. The court did not address the factor deemed so critical by the Supreme Court in *Raybestos-Manhattan, supra,* namely, that the "generating source" of the right to receive the stock issued by the new corporation was the transfer to it of the assets of the nonsurviving corporation. In view of these circumstances and the provisions of the Ohio statutes, which are quoted above, we would have difficulty in accepting the decision of the Common Pleas Court as the basis for deciding the wholly different issue before us. However, any doubts raised by *Robison* have been removed because defendant has called our attention to a decision of the Ohio Supreme Court, which was handed down about one year later than *Robison* and holds directly to the contrary. It is the case of Cleveland City Ry. Co. v. First Nat'l Bank of New York, 68 Ohio St. 582, 67 N.E. 1075 (1903). In that case, which involved the same agreement of consolidation as that before the Common Pleas Court in *Robison,* the plaintiff bank claimed to be the assignee of shares of the non-surviving corporation and sought to recover damages from the new corporation because of the wrongful conversion of the newly issued stock by Shipherd. In an unreported decision, the Cuyahoga County Common Pleas Court followed the decision in *Robison* and found the Cleveland City Railway Company liable. The decision was affirmed by the Ohio Court of Appeals, 22 Ohio Cir. Ct. Reports 165 (8th Cir.

1901). The Ohio Supreme Court reversed both decisions and held that the applicable Ohio statute

> not only expressly empowered [the directors of the constituent corporation] to agree upon the manner of converting the capital stock of each of the constituent companies into that of the new company, but [also] they are invested with the widest discretion as to the details of the consolidation, which may not be specifically included in the words of the statute.

The Court then went on to hold that the agreement was valid; that it conformed to the applicable state statutes; that it was assented to by the shareholders, and that it was properly performed.

As a result of this holding by the Supreme Court of Ohio, we cannot accept the decision of the Common Pleas Court in *Robison* as authority for deciding the issue now before us. Unlike the Texas statutes before the Fifth Circuit in *Union Bankers, supra,* it is apparent that there is nothing in either the statutory or the decisional law of Ohio, as expounded by the highest court of that state, which denies the non-surviving corporation in a merger the right to receive or control the disposition of the shares issued in exchange for its assets. On the contrary, we find that the Ohio law supports the opposite conclusion and recognizes the existence of the implied transfer to the shareholders of a non-surviving corporation of the right to receive such stock.

For the reasons discussed above, we hold that the 1965 merger of Pure Oil Company into Union Oil Company of California gave rise to a taxable transfer by Pure to its own stockholders of the right to receive the newly issued shares of Union. The transfer documentary stamp tax imposed by Section 4321 of the Internal Revenue Code of 1954 was properly assessed.

Upon the foregoing opinion, which contains the essential findings of fact as stipulated by the parties, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is dismissed.

NICHOLS, Judge (concurring):

I join in the decision of the court but I question its approach to the problem before it. When the United States Supreme Court elects to take a case on certiorari, receives briefs, hears oral argument, and puts out a decision including a signed opinion, it seems to me it is entitled to expect that it has created a precedent that lower Federal courts will follow over a wide area. Diligence by them in reducing the authority of such a holding to its own peculiar facts, is hardly to be reconciled with the place of the Supreme Court in our judicial system.

Here we have a decision, Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44 (1935). The Court does not quote the laws of New Jersey, as it does the applicable Revenue Act. Neither does the more extended opinion below, 10 F.Supp. 130, 80 Ct.Cl. 809 (1935). In holding that the stamp tax liability attached to the "vicarious" transfer of the new corporation's stock from the old corporations to the stockholders, I am sure it expected its decision to apply as a precedent to reorganizations and mergers throughout the United States. Presumably it subscribed to the idea that Federal taxes should be uniform everywhere. Had it anticipated and meant to sanction a hair splitting analysis of differences between the laws of New Jersey, and of other states, with respect to the procedural details of reorganizations and mergers, with results determinative of tax liability, it might very well have thrown in the sponge and held the other way. The decision rests on a fiction, in that new stock which by agreement was to go direct to the stockholders, is imagined or presumed to go to them via the old corporations. Whether the fiction is not permitted to be a fact under local law, or is just not the agreement of the parties, appears to me to be neither here nor there.

Union Bankers Ins. Co. v. United States, 317 F.2d 598 (5th Cir., 1963), is the case that should be reduced as a precedent to its own peculiar facts. The incapacity of the old corporation to receive the stock of the continuing corporation in that case was due to a prohibition in Texas law, on substantive grounds. In fn. 16, Chief Judge Brown limits his holding to such a case. If we exclude it from application here, we do only what he has first done for us. The alleged strictures of Ohio law were procedural only.

My concurrence in the decision, therefor, does not depend on who is right about the Ohio cases. I would apply *Raybestos* uniformly in all 50 states, in the absence of special factors which we could pass upon should they arise.

SKELTON, Judge (dissenting):

I do not agree with the decision of the court. The facts are stipulated and involve the merger of Union Oil Company of California (Union) and Pure Oil Company, a corporation, of Ohio (Pure). Pure was merged or absorbed into Union. Thus, Union became the "acquiring" corporation and Pure became the "absorbed" corporation. The parties agree that the merger was governed by the laws of Ohio.

After the merger, Union issued stock in the new corporation on a pro rata basis previously agreed upon to its old stockholders and to the old stockholders of Pure. Union paid documentary stamp taxes in the sum of $584,780.80 on the issuance of such stock. The Internal Revenue Service (IRS) required Union to pay an additional $233,912.34 as a documentary stamp tax for an alleged and theoretical transfer by Pure of the new shares of the new Union corporation, or the right to receive such shares, to the former owners of Pure common stock. Union contends that the collection of said $233,912.34 by the IRS was illegal and sues for its recovery. The Government says the tax is legal under 26 U.S.C. § 4321 and Treasury Regulation § 47.4321–2. I do not agree.

The court relies heavily on the case of Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44 (1935), which held that where the acquiring corporation issued new shares directly to the former stockholders of the absorbed corporation, there was in substance a transfer for tax purposes of the new shares by the absorbed corporation to its old stockholders because it had a right to receive the new shares which it passed on to its old stockholders. This resulted in a "two step" or a "two-transfer" transaction. The *Raybestos-Manhattan* decision is correct in a state (New Jersey) where the law of the state allows the absorbed corporation to own or possess the stock of the acquiring corporation. However, the converse is true where the law of the state governing the merger does not permit the absorbed corporation to own or possess stock of the acquiring corporation. In the latter case, no transfer of the stock of the acquiring corporation can be made to the absorbed corporation nor by the absorbed corporation to its former stockholders, and consequently, no stamp tax is due. That is the situation in this case.

The parties agree, and the court holds, that the stamp tax is imposed on the basis of state created relationships. See Fidelity-Baltimore Nat'l Bank v. United States, 328 F.2d 953, 957 (4th Cir. 1964), cert. denied, 379 U.S. 823, 85 S. Ct. 48, 13 L.Ed.2d 34. In other words, if the state law prohibits or does not authorize or permit an absorbed corporation to hold or possess stock of an acquiring corporation with which it has been merged, it cannot transfer any of such stock to its former stockholders and, consequently, no stamp tax is due. This was the express holding of the court in Union Bankers Ins. Co. v. United States, 317 F.2d 598 (5th Cir. 1963), which involved the merger of two insurance companies under Texas law, which prohibited an insurance company from owning stock in another insurance company. There, the acquiring corporation issued its new stock directly to the

former stockholders of the absorbed corporation. Nevertheless, the IRS assessed a transfer stamp tax on the issuance of the stock to the former stockholders of the absorbed corporation, as it has done in this case, on the theory expressed in *Raybestos-Manhattan, supra*. The Fifth Circuit Court held the assessment to be illegal, saying:

> \* \* \* [I]t is within the competence of the local law alone to determine the circumstances under which assets of incorporated entities may be transferred and how and in what manner the consideration therefor is to, or may, be paid. In every case so far \* \* \* the Court in finding a taxable transfer was justified in holding on the basis of the pertinent local law that the Absorbed Company had the right to receive and hence the right to direct the disposition of stock issued in payment for assets. [Footnotes omitted.] [*Id*. at 601–602.]

> \* \* \* \* \* \*

> \* \* \* [T]here is a transfer subject to the stamp tax only if, under the law of Texas, in the execution of that corporate devised plan for exchange of assets for stock, the Absorbed Company had the right to acquire such shares of stock and, having such right, it chose to direct their disposition of stock to others.

Since under Texas law the Absorbed Company had no such right \* \* \* the transaction may not \* \* \* be viewed as though the stock was first received and then redistributed. [Footnote omitted.] [*Id*. at 603–604.]

The laws of Ohio which govern the present case are not as explicit as were the laws of Texas in the *Union Bankers Ins. Co.* case, because of the absence of a similar statute, but the effect is the same. Pertinent sections of the Ohio Revised Code provide as follows:

§ 1701.78 *Merger and consolidation procedure.*

\* \* \* \* \* \*

(B) To effect such merger or consolidation, the directors of each con-

stituent corporation shall approve an agreement \* \* \*, which agreement shall set forth:

\* \* \* \* \* \*

(10) \* \* \* [T]he manner and basis of making distribution to shareholders of the constituent corporations, which distribution to shareholders of any of the constituent corporations, in extinguishment of or in substitution for shares of such constituent corporations, may be by way of shares \* \* \* of the surviving or new corporation \* \* \*.

\* \* \* \* \* \*

§ 1701.81 *Effect of merger.*

(A) When such merger or consolidation becomes effective:

(1) The separate existence of all the constituent corporations, except the surviving or new corporation, shall cease \* \* \*.

In accordance with these statutes, the shares of the acquiring corporation must be issued directly to the former stockholders of the absorbed corporation, because they are the only ones entitled to receive the stock. Furthermore, the absorbed corporation no longer exists after the merger and cannot receive the stock nor, transfer it to its former stockholders. The law of Ohio was interpreted in this fashion in the case of Robison v. Cleveland City Ry. Co., 13 Ohio Dec. (10 Nisi Prius Rep.) 1 (Cuyahoga Common Pleas 1902). That case involved the merger of two Ohio corporations. The court held that upon the merger, the absorbed corporation ceased to exist and stock of the new acquiring corporation could not be delivered to the absorbed defunct corporation but had to be delivered directly to its former stockholders. There, the court said:

> Next, as to paragraph 7 of the consolidated agreement, it contemplates the delivery of the stock of the consolidated company to the constituent companies as such. This is impracticable because the constituent companies after the consolidation went into effect, did not remain in existence for

any such purpose, and the companies, as such, could not surrender the old stock, certainly not without the consent of the holders nor were they authorized to receive the new stock. And I am of the opinion that the statute contemplates the surrender of the old stock by individual holders and the issue of new stock to them, and that the new stock could be delivered only to individual holders or to their authorized agents. * * * [*Id.* at 17.]

The same interpretation of the Ohio law is found in 13 Ohio Jur.2d, Corporations § 810 (1955), in pertinent part as follows:

* * * *The shares of the new company must be delivered or distributed directly to the shareholders of the constituent corporations or their authorized agents. A delivery of the shares to the constituent corporations cannot be made* * * *. [Emphasis supplied.]

*See also,* Compton v. Wabash, St. Louis & Pacific Ry., 45 Ohio St. 592, 16 N.E. 110 (Ohio 1888).

Under these authorities, it appears clear that the absorbed corporation had no right to receive the shares of the acquiring corporation, and, in fact, could not do so since it no longer existed, and, consequently, could not transfer any such shares, nor any right to them to its former stockholders. Therefore, it made no transfer and no tax was due. This principle is not only in accordance with Ohio law, but also complies with the merger agreement of Union and Pure which is a part of the stipulation in this case. That agreement provides in pertinent part as follows:

### ARTICLE II.

\* \* \* \* \* \*

2.4 As promptly as practicable after the effective date of the merger, each holder of an outstanding certificate or certificates theretofore representing shares of common capital stock of Pure may surrender the same to a transfer agent or agents designated by the Surviving Corporation, and such holder shall be entitled upon such surrender to receive in exchange therefor a certificate or certificates representing the number of Preferred Shares of the Surviving Corporation into which the shares of common stock of Pure theretofore represented by the certificate or certificates so surrendered shall have been converted as aforesaid. Until so surrendered, each outstanding certificate which, prior to the effective date of the merger, represented common stock of Pure, shall be deemed for all corporate purposes to evidence ownership of the number of Preferred Shares of the Surviving Corporation into which the shares of common stock of Pure (which, prior to such effective date, were represented thereby) have been so converted.

2.5 Upon the effective date of the merger, it shall be deemed that the stock transfer books of Pure are closed and no transfer of shares of Pure shall thereafter be made or consummated. \* \* \*

### ARTICLE III.

3.1 Upon the effective date of the merger provided for in this Agreement, the separate existence of Pure, except to the extent, if any, continued by statute, shall cease, \* \* \*.

\* \* \* \* \* \*

3.3 The "effective date of the merger" shall be (and such phrase as used herein shall mean) the time at which this Agreement is filed by Union in the office of the Secretary of State of the State of California. \* \* \*

It is clear from this agreement that the merger was to be effective when the agreement was filed in the office of the Secretary of State of the State of California, and on that date Pure would cease to exist and its stock transfer books were closed and "no transfer of shares of Pure shall thereafter be made or consummated." *After* the merger, the former

stockholders of Pure could surrender their stock to a transfer agent of Union (the surviving or acquiring corporation) and receive shares *directly from the acquiring corporation*. Until so surrendered, the old shares of Pure were evidence of ownership of the number of shares in Union into which the shares of Pure had been converted. Thus, this agreement shows that after the merger Pure was a dead corporation and did not have and could not have anything to do with the issuance or transfer of stock in the acquiring corporation to Pure's former stockholders. This agreement fully complied with Ohio law, and, together with such law, should be dispositive of this case.

In the present case, the court points out that in the *Robison* case, *supra,* the court held that under the Ohio statute "the new stock could be delivered only to individual holders *or their authorized agents*." (Emphasis supplied.) The opinion of our court then states that the Supreme Court of Ohio holds directly to the contrary in the case of Cleveland City Ry. Co. v. First Nat'l Bank of New York, 68 Ohio St. 582, 67 N.E. 1075 (1903). The court seems to rely on that case in deciding in favor of the Government in this case. The reliance by the court on the *Cleveland City Ry.* case is misplaced. I do not read that case the same way the court does. In the first place, the case is clearly distinguishable from the *Robison* case on both the law and the facts. In the second place, the court in the *Cleveland City Ry.* case never considered nor addressed itself to the problem decided in *Robison* and which is involved here. A careful reading of the *Cleveland City Ry.* case shows that it does not overrule nor contradict the decision in *Robison* on the problem we have before us. (Actually, it does not even mention the *Robison* case.) The two cases are compatible in this regard. In fact, in my opinion, the *Cleveland City Ry.* case actually supports the position of the plaintiff in the instant case. This is shown by the following facts in that case, together with the decision of

the court. In the *Cleveland City Ry.* case there was a merger of two corporations under Ohio law. Prior to the merger, the stockholders of the absorbed corporation signed a written instrument naming and appointing one Robison and one Shipherd as their *agents and proxies* to deliver their stock in the absorbed corporation to the acquiring corporation and to receive for them and in their behalf the new stock in the acquiring corporation. The new stock was delivered to said agents by the acquiring corporation for the stockholders of the absorbed corporation after the merger. The stock was issued to them as trustees.

It should be kept in mind that the *Robison* case and the *Cleveland City Ry.* case both arose out of the merger of the same two corporations, but the issues in the two cases are different.

Also, it should be noted that Robison and Shipherd were president, vice president, and treasurer, respectively, of the absorbed corporation, and were made directors, vice-president, treasurer, and transfer agent of the acquiring corporation after the merger. However, it should be emphasized that when the acquiring corporation issued the stock to Robison and Shipherd it was issued to them as agents, proxies and trustees of the former stockholders of the absorbed corporation and not as officers of the absorbed corporation. This is shown by the decision of the court in *Robison* when it said:

> * * * [T]he delivery of stock of the new company could not be made to the president and treasurer [Robison and Shipherd] of the cable company [the absorbed corporation] as such, *because when the consolidated company* [the acquiring corporation] *went into effect, they ceased to have any official relations to the old company* except so far as necessary for the protection of creditors. [Emphasis supplied.] [*Id.* at 18.]

The delivery of the stock to Robison and Shipherd, as agents and trustees of Pure's former stockholders was in ac-

cord with the decision in *Robison* when the court in that case held that "the new stock could be delivered only to individual stockholders or their authorized agents." After the new stock was delivered to Robison and Shipherd as trustees, agents, and proxies for the stockholders of the absorbed corporation by the acquiring corporation, the said Shipherd converted to his own use a great number of the new shares delivered to him for the shareholders of the absorbed corporation. Prior to the merger a stockholder, who had signed the instrument authorizing Robison and Shipherd to receive the new stock for the stockholders, had pledged his stock in the absorbed corporation to the First National Bank of New York as security for a loan. After the merger and the delivery of the new stock to Robison and Shipherd as trustees and agents for the stockholders of the absorbed corporation, and after the conversion of the stock by Shipherd, said stockholder assigned his claim of loss due to Shipherd's conversion of the stock, to said bank. The bank then sued the new acquiring corporation for the stockholder's loss. The court held that the acquiring corporation was not liable, saying that when it delivered the new stock to Robison and Shipherd as trustees and agents for the old stockholders of the absorbed corporation it had complied with the authorization signed by such stockholders and had done all it was required to do. Thus, it is clear that no new stock was delivered to the absorbed corporation and none of such stock was distributed by it to its former stockholders. The court did not even mention or discuss whether this could or could not be done after the merger. The delivery of the stock of the acquiring corporation to the trustees and agents of the former stockholders of the absorbed corporation was the same as delivering the stock to the stockholders themselves. This was in complete accord with the requirements of the Ohio law as interpreted in *Robison, supra,* and other cited authorities above, to the effect that after the merg-

er the absorbed corporation ceased to exist and could not receive nor transfer shares of the new acquiring corporation to its former stockholders and that such new shares were required to be issued by the acquiring corporation directly to the former shareholders of the absorbed corporation or their authorized agents. For all of these reasons, in my opinion, the *Cleveland City Ry.* case does not support the defendant in the present case, but on the other hand is authority for the plaintiff. The court errs in relying on it in deciding for the defendant.

The court cites the *Raybestos* case and American Processing & Sales Co. v. Campbell, 164 F.2d 918 (7th Cir. 1947), cert. denied, 333 U.S. 844, 68 S.Ct. 661, 92 L.Ed. 1127 (1948), American Mail Line Ltd. v. United States, 101 F.Supp. 364, 121 Ct.Cl. 63 (1951); and U. S. Industrial Chemicals, Inc. v. Johnson, 181 F.2d 413 (2d Cir. 1950), in support of its decision. These cases, though valid under the laws of the states where they arose, are not apposite here because they involved the laws of states other than Ohio (New Jersey, Illinois, Nevada-Delaware, and West Virginia-Delaware) with reference to the merger of corporations. The laws of such states are different to the laws of Ohio with which we are concerned in this case. Consequently, such cases should be disregarded in deciding our case.

The parties agree, and the court concedes, that in the case before us, no stock of Union, the acquiring corporation, was *actually* issued to Pure, the absorbed corporation, after the merger, and that Pure never *actually* transferred any stock of the new acquiring corporation nor any right to receive such stock to its former stockholders after the merger. Furthermore, in my opinion, neither transfer could be made under Ohio law. Under these circumstances, no stamp tax is due and the plaintiff is entitled to judgment. But the court gets around these fatal defects in the Government's case by applying the theory of *Raybestos* and the other cases it

cites, saying that there was an *implied* issuance of the new stock by Union to the defunct and expired Pure corporation, and that, in turn, there was an *implied* transfer of such stock by Pure, which no longer existed, to its former stockholders. I cannot agree to the imposition of a tax on a taxpayer, especially of the magnitude of that involved here, based on the hypothetical fiction and supposition that two transfers prohibited by Ohio law had taken place. It amounts to allowing the IRS to assess and collect a tax based on speculation, supposition, and *implication on top of implication* that the transfers had been made contrary to Ohio law. Everyone will agree that every responsible citizen should pay taxes imposed upon him by the plain and unambiguous provisions of laws enacted by Congress. On the other hand, a taxpayer should not be required to pay a Federal stamp tax imposed upon him on the theory that by inference, speculation, or implication on top of implication two stock transfers had taken place contrary to governing state law. In my opinion, that is what has happened here, where two transfers are held to have occurred by implication when the evidence shows that neither of the transfers *actually occurred, nor could occur.* The tax imposed on the taxpayer in this case is wrongful, illegal, and confiscatory, for all of the reasons set forth above.

The decision of the court that the tax was validly imposed would be correct on the basis of *Raybestos* and other cases cited by the court if Ohio laws authorized the alleged transfers of the stock from Union to Pure and from Pure to its former stockholders after the merger. I do not believe such authorization can be found in Ohio laws. No Ohio case to that effect has been cited. On the other hand, Ohio laws and the cited Ohio cases make it impossible for such transfers to be legally accomplished. Consequently, no transfer tax is due.

I would enter judgment for the plaintiff for $233,912.32, plus interest.